IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARON SCOTT, and
DUREYA SCOTT,

        Plaintiffs,

v.                                              No. CIV-09-797 JB/GBW

COUNTY OF DONA ANA, et al.,

        Defendants.

**<u>REPORT & RECOMMENDATION</u>**

This matter is before the Court on County Defendants' Motion to Dismiss. *See docs. 106, 107.* "County Defendants" includes Dona Ana County, Robin Gojkovich, Linda Maldonado, Mary Lou Ward, Paul Richardson, Curtis Childress, Travis Wells, John Rubio, John Palmer, Valerie Heredia, Joe Jacques, Manny Hernandez, Heather Ferguson, and "all unknown Animal Control Officers." *Id.* County Defendants assert that Plaintiffs have failed to plead their claims with sufficient particularity, failed to meet the notice-pleading standard, and made claims they cannot pursue. *Doc. 107.* Because I agree with County Defendants' arguments, I recommend their motion be granted and Plaintiffs' claims against them be dismissed without prejudice.

## I.  Introduction

_Facts_:

        This case arises out of a series of raids on the properties of Plaintiff brothers,
Daron and Duryea Scott, allegedly carried out or supported by the Dona Ana County
Sheriff's Department, New Mexico's Animal Cruelty Task Force, the El Paso Police
Department, Dona Ana County Animal Control, the City of Las Cruces, and Animal
Protection of New Mexico, Inc.  _Doc. 105_ at 2-6.  Plaintiffs bring their claims against
various employees of the above listed organizations plus some of the organizations
themselves.  _Id_. at 1-4.  The Complaint is organized into the following sections: (1)
"Jurisdiction and Venue," (2) "Parties," (3) "Facts Common to All Counts," (hereinafter
"Facts") (4) "Cause of Action" 1-20, (5) "Jury Demand," and (6) "Prayer for Relief."
_Doc. 105_.  As discussed in more detail below, despite this apparently organized
structure, it is difficult to ascertain from the Complaint which individual defendants are
alleged to work for which defendant (or non-defendant) organizations.  It is also
difficult to know exactly who was purportedly involved with specific activities.
Nonetheless, the Court will attempt a summary of the alleged events that gave rise to
Plaintiffs' claims.

_Background, Investigations, and Raid-Planning_

        Plaintiffs Daron and Duryea Scott are brothers who, at the time of the raids,
collectively owned 68 pit bulls.  _Doc. 105_.  They lived at different residences in El Paso,

and each also rented a property in Chaparral, New Mexico.  *Id.*  Plaintiffs kept dogs at

each of the four locations.  *Id.*  In December of 2006, and then again in June of 2007,

Defendants Travis Wells and Paul Richardson investigated Plaintiffs' properties and

dogs, presumably due to suspicion of dog fighting, animal cruelty, and/or kennel law

violations.  *Id.* at 5.  It is unclear for whom Defendants Wells and Richardson allegedly

worked.  The "Parties" section merely identifies them a "public employee[s] and law

enforcement officer[s]" (*Id*. at 3-4), while the "Facts" section refers to them alternately as

"Defendant Dona Ana County and City of Las Cruces employees" and "Defendant

Dona Ana County Animal Control Officers."  *Id*. at 5-6.

  After the investigations, Robyn Gojkovich purportedly interviewed Defendants

Wells and Richardson, decided to seize the dogs, and then planned and orchestrated

four raids: one on each of Plaintiffs' properties in Chaparral and one on each of their

homes in El Paso.  *Doc*. 105.  It is unclear for whom Robyn Gojkovich allegedly worked.

In the "Parties" section she is referred to simply as a "public employee and law

enforcement officer," (*doc. 105* at 3) and in the "Facts" section she is referred to merely

as "Defendant Officer."

  On August 8, 2007, the day of the raids on the Chaparral properties, Plaintiffs

claim that Defendant Gojkovich put together a raid task force "at the Las Cruces, New

Mexico station" of twenty to thirty officers, including eleven named "Defendant

Officers": Linda Maldonado, Travis Wells, Investigator Heredia, Joe Jacques,[1] Mary Lou

Ward, Paul Richardson, FNU Rubio, FNU Palmer, Manny Hernandez, Heather

Ferguson, and Darren White. *Doc. 105* at 6. Despite being named in this list of

"Defendant Officers," Investigator Heredia and Joe Jacques are not actually named

parties to this suit. *See infra* pp. 18-19.

For the remaining nine "Defendant Officers," it is unclear for whom they

allegedly worked. In the "Parties" section, all but Heather Ferguson are referred to as

"public employee[s] and law enforcement officer[s]." The Complaint provides more

details for FNUs Palmer and Rubio without providing additional information.

Specifically, the Complaint alleges that "Defendants Investigator FNU Palmer,

Investigator FNU Rubio, and all other John and Jane Does. . . were City, County, and

State public employees and law enforcement officers." *Id*. at 4. It is especially

confusing why Heather Ferguson would be lumped into the category "Defendant

Officers" because in the "Parties" section, she is described as "a private employee of the

Defendant Animal Protection of New Mexico, Inc., a private non-profit company

administering the Defendant Animal Cruelty Task Force of New Mexico and its animal

rights hotline." *Id*. at 3.

---

[1] In the many complaints and attempted amended complaints in this litigation, Plaintiffs have at times made allegations against "Joe Jacques," and at other times against "Joe Jacquez." The Court assumes these names refer to the same person. *See also, infra*, note 6.

*Raid 1: Daron Scott's Rental Property at 533 Luna Azul, Chaparral, New Mexico*

Defendant Gojkovich's raid task force then moved from the Las Cruces station to Plaintiff Daron Scott's property in Chaparral, New Mexico (533 Luna Azul), arriving at about 11:30 a.m.  *Id.* at 7.  It is unclear what individuals are alleged to have been present at that first raid.  The list of individual Defendants supposedly present at the 533 Luna Azul raid differs from the list of Defendants allegedly present at the raid task force round-up in Las Cruces earlier that morning: Defendants Darren White and Heather Ferguson are not specifically listed as present at the 533 Luna Azul raid.  *Id.* at 7.  The other nine Defendants present at the Las Cruces meeting (Maldonado, Richardson, Wells, Heredia, Jacques, Ward, Rubio, Palmer, and Hernandez) are listed as present at the 533 Luna Azul raid by name.  *Id.* at 7.  As a final catchall, Plaintiffs add that unspecified "other Defendant Officers" were also present.  *Id.*  The only other named Defendants in this case not already listed as present at the 533 Luna Azul raid are Curtis Childress, Darren White, and Heather Ferguson.  It is simply unclear whether Plaintiffs intended to allege that any of those three were present via use of the catch-all category "other Defendant Officers."

Whoever was present allegedly stayed until 1:30 p.m., and during that time a lock was broken, a gate was opened, the property was searched, and 14 dogs were confiscated.  *Id.* at 7-8, 12.  All of these actions were alleged to have been perpetrated by "Defendant Officers," which, in this context, presumably means all those present at the

5

first raid, whoever those Defendants might be.  The raid participants did not have a

warrant during the first raid.

*Raid 2: Duryea Scott's Rental Propery at 2705 Green Tree Loop, Chaparral, New Mexico*

At about 1:30 p.m., the same group of Defendants present at the 533 Luna Azul

raid purportedly moved to Plaintiff Duryea Scott's property at 2705 Green Tree Loop in

Chaparral.[2]  Between 1:30 and 7:30 p.m., "Defendant Officers" allegedly broke a lock on

a gate, opened a gate without permission, searched the property for dogs and evidence

of dog fighting, broke two locks securing chains on a couple of the dogs, and seized 31

dogs.  *Id.* at 9-12.  Soon after the officers' arrival, Duryea Scott's neighbor called him to

tell him about the search of his property.  *Id*. at 10.  Mr. Scott called his neighbor back

and asked him to tell the officers that he was on his way there.  *Id*.

Mr. Duryea Scott arrived at his property at about 3:00 p.m.  *Id*.  Defendant

Gojkovich allegedly "placed him in custody in the back of her patrol car and in

conjunction with Defendant Maldonado, interrogated him [for 10-15 minutes] and

taped the conversation without Mirandizing him."  *Id.*  She then called Magistrate Judge

---

[2]  In the Amended Complaint, the list of Defendants present at the 2705 Green Tree Loop raid is identical to the list of those present at the 533 Luna Azul raid: "Defendant Gojkovich, along with Animal Control Officer Linda Maldonado, Defendant Paul Richardson, Travis Wells, Investigator Heredia, Joe Jacquez, Mary Lou ward, Investigator FNU Rubio, Investigator FNU Palmer, Manny Hernandez, and the other Defendant Officers, arrived at the Plaintiff's rented property. . ."  *Doc. 105* at 9; see same quote at *doc. 105* at 7.

Silva, read a search warrant over the phone, and the judge authorized it telephonically. *Id*. at 11. She gave Mr. Duryea Scott a copy of the warrant she just read to the judge, signed it, noted the judge's telephonic approval on the judge's signature line, and had Plaintiff walk with her around the property. *Id*. Defendants Gojkovich and Maldonado continued to interrogate Duryea Scott about the dogs, and one or both of them accused him of animal cruelty and dog fighting. *Id*. At some point, Plaintiff Duryea Scott was allowed to sit in his car, which was parked inside the property, but he was not allowed to leave the property and thought he was under arrest. *Id*. at 12.

Having received a phone call from Duryea Scott that the Chaparral properties were being raided, Plaintiff Daron Scott came to his brother's property at about 6:00 p.m. *Id*. Purportedly, he was soon detained by Defendants Gojkovich and Maldonado and placed in a patrol car where they interrogated him for about 15 minutes and taped the conversation. *Id*. Defendant Gojkovich then allegedly printed a search warrant for the earlier search of the 533 Luna Azul property, signed it in front of him, and noted Judge Silva's telephonic approval on the line for the judge's signature. *Id*.

*Interrogation of Duryea Scott at the Humane Society*

When the raid ended at 7:30 p.m., Defendant Gojkovich told Duryea Scott to call her to arrange a time to come speak with her at the Humane Society. *Id*. at 12-13. He called her the next day, August 9th, and then met with her that Friday, August 10, 2007. *Id*. at 13. At the meeting, he was interrogated by Defendants Gojkovich, Ferguson, and

Maldonado without being read his *Miranda* rights, and those three Defendants used the information garnered from that meeting to apply for search warrants for the Plaintiffs' El Paso homes.  *Id.*

*Raid 3: Daron Scott's Home at 11036 Wedge Lane, El Paso, Texas*

That very evening (August 10th), Defendants Gojkovich, Childress, Maldonado "and other Defendant Officers with the assistance of El Paso Police Department Officers," allegedly raided Plaintiff Daron Scott's home at 11036 Wedge Lane in El Paso. *Id. at 13*  Again, it is not clear which individuals are meant to be included in the category "other Defendant Officers."  Whoever was present searched the premises pursuant to a Texas search warrant, and that warrant was allegedly issued based on facts ascertained from the interrogation of Duryea Scott earlier that day.  *Id.*

The raid lasted from around 5:30 p.m. to midnight, and during the course of it "Defendant Officers" kept Plaintiff Daron Scott and his wife in supervised custody in their front room for five hours and would not let them leave without an escort.  *Id.* "Defendant Officers" also searched Daron Scott's home, vehicles, and his and his wife's person, and they purportedly confiscated computers, cameras, vitamins, forty-five pound weights, a weight bench, exercise equipment, dog pedigree documents, chains, and clorox.  *Id.* at 14.  From one of Mr. Scott's vehicles "Defendant Officers" also seized keys, chains, a clorox bottle, and chain swivels.  *Id*.  Some officer allegedly questioned Daron Scott without advising him of his *Miranda* rights but the Amended Complaint

8

does not identify the questioner in any fashion.  *Id.* at 13.

*Raid 4: Duryea Scott's Home at 5707 Creston Avenue, El Paso, Texas*

At the same time as officers raided Plaintiff Daron Scott's home on August 10,

2007, Defendants Ferguson, White, "and other Defendant Officers" allegedly raided

Duryea Scott's home at 5707 Creston Avenue in El Paso.  *Id*. at 14.  Like the

simultaneous raid on Daron Scott's home, it lasted from about 5:30 p.m. to midnight,

and the searches were done pursuant to a Texas search warrant purportedly issued on

the basis of facts disclosed at Duryea Scott's interrogation at the Humane Society earlier

that day.  *Id.*  "Defendant Officers" allegedly kept Plaintiff Duryea Scott, his wife and

his daughter in supervised custody outside of their house for four hours and would not

let them leave without an escort.  *Id.* "Defendant Officers" searched Duryea Scott's

home, vehicles, and his and his wife's person, and they confiscated computers, cameras,

pictures, magazines, books, tax documents and receipt books.  *Id.* at 14.  Because of the

catchall category "and other Defendant Officers," it is particularly unclear what

particular allegations are made against whom.  Finally, some officer allegedly

questioned Duryea Scott without advising him of his *Miranda* rights but the Amended

Complaint does not identify the questioner in any fashion.

*Arrests and Additional Allegations:*

In October of 2007, arrest warrants were issued for the Scott brothers.  *Id.* at 15.

Daron Scott was arrested at the school where he worked on October 18, 2007, and

Duryea Scott turned himself in that same day.  *Id*.  They were charged with dog fighting and/or animal cruelty.  *Id*.  The telephonically-approved search warrant for the first two raids (August 8, 2007, in Chaparral) was later found invalid, and the criminal charges were either dropped or dismissed.  *Id*. at 11, 15.

Plaintiffs further contend that various Defendants conspired to violate their constitutional rights by raiding their properties, seizing their dogs, obtaining warrants for their arrest, and securing grand jury indictments against them.  *Id*. at 5, 7, 15.  They also claim that Defendant Gojkovich intentionally refrained from getting arrest warrants or a valid search warrant for the Chaparral properties because she knew she had no probable cause to believe Plaintiffs were engaged in dog fighting or cruelty to animals.  *Id*. at 6.  Finally, Plaintiffs allege Defendant Gojkovich "developed a plan to deceive, coerce, harass and intimidate the Plaintiffs into consenting to interrogations and property searches by detaining and interrogating Plaintiffs with a show of force."  *Id*. at 7.

*Procedural History:*

In July of 2009, Plaintiffs individually filed *pro se* complaints against roughly 30 entities and individuals primarily for violations of their right to be free from illegal searches and seizures.  *See doc. 1*; *see also doc. 1* for case 09-cv-799-JB-GBW.  Defendants removed the case to Federal Court in August of 2009.  *Id*.  In December of 2009, County

Defendants[3] moved for summary judgment and asserted qualified immunity.  *Docs. 49,*

*50*.  Later that month, Plaintiffs obtained counsel and moved to consolidate their

separate cases, sought leave to amend the complaint, and requested that the Court stay

ruling on pending dispositive motions until a consolidated, amended complaint was

filed.  *See docs. 51, 52*.  The case was referred to me for recommended disposition

thereafter.  *Doc. 53.*

For the next seven months, Plaintiffs attempted to produce an amended

complaint that complied with the rules of procedure.  *See generally docs. 51, 63, 66, 68, 75,*

*77, 78, 80, 83, 88, 90, 92, 95, 96, 97, 101, 104.*  I held no fewer than six hearings or

conferences to discuss with Plaintiffs' counsel the proper procedure for filing an

amended complaint, and perceived futility and sufficiency issues with Plaintiffs' claims

as proposed.  *See docs. 61, 65, 75, 80, 95, 104.*  On his sixth attempt, Plaintiffs' counsel

produced an amended complaint that did not blatantly violate any civil rule, and thus I

granted leave to file the amended complaint.  *See docs. 51, 63, 68, 77, 83, 84, 90, 97, 101.*

On August 5, 2010, Plaintiffs filed the Amended Complaint.  *Doc. 105.*  The Complaint

divides out 20 individual "cause[s] of action," and makes claims based on various

federal and state constitutional violations and numerous state tort actions.  County

---

[3]  "County Defendants" in the Motion for Summary Judgment includes all of the
individuals included in this motion to dismiss except Heather Ferguson and "all
unknown animal control officers."  *See doc. 49.*

Defendants promptly filed a Motion to Dismiss (*docs. 106, 107*), Plaintiffs responded

(*doc. 109*), and Defendants replied (*doc. 111*).

<u>*Legal Standards*</u>:

Defendants' Motion to Dismiss is premised upon a failure to state a claim upon

which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).   To state a cause of action, a §

1983 complaint needs two allegations: (1) that the plaintiff was deprived of a federal

right; and (2) that the person who deprived him acted under color of state law." *Choate*

*v. Lemmings*, 294 F. App'x 386, 392 (10th Cir. 2008)(citing *Gomez v. Toledo*, 446 U.S. 635,

640 (1980)).

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations

within the four corners of the complaint after taking those allegations as true." *Mobley*

*v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   After *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007) clarified the pleadings standards for the federal courts, *Robbins v.*

*Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) set the Tenth Circuit standard for what

constitutes adequate pleadings such that a complaint may withstand a motion to

dismiss.  *Robbins* 519 F.3d at 1247-50.  Given the importance of *Robbins* to my

recommended disposition, it is worthwhile to review its facts.

The plaintiffs in *Robbins* were parents of an eight-month-old infant who was

killed while being cared for at a state-subsidized daycare center.  *Id.* at 1245-46.  The

parents had gone to the Oklahoma Department of Human Services seeking, among

other things, subsidized daycare for their infant daughter.  *Id.*  They were informed that there was only one daycare center to which they could send their daughter and receive the subsidy.  *Id.*  That center was licensed by the state and privately owned and operated by Carla Beth McKinney.  *Id.*  Upon this advice, the plaintiffs enrolled their daughter in Ms. McKinney's daycare center.  *Id.*  Soon thereafter, while in Ms. McKinney's care, the infant died from trauma to the head with a blunt instrument.  *Id.* at 1246.  The death was ruled a homicide, and the state charged Ms. McKinney with first degree murder.  *Id.*  The parents later filed suit against Ms. McKinney, the McKinney Daycare center, Oklahoma's DHS, five named employees of DHS in their individual capacities, and ten unnamed employees of DHS in their individual capacities for damages arising from certain torts and § 1983 liability due to the deprivation of the infant's constitutional rights.  *Id.*

The District Court denied a motion to dismiss as to three of the named DHS employee defendants, and they moved for reconsideration on grounds of qualified immunity.  *Id.*  The District Court denied the motion for reconsideration,[4] noting the discovery must progress because the court had "insufficient information" to determine if qualified immunity was appropriate.  *Id.*  Defendants appealed to the Tenth Circuit,

---

[4]  The District Court granted the motion to reconsider as to the complaint's request for declaratory relief, but it denied the individual defendants' qualified immunity defenses as to the prayer for damages.  *Robbins*, 519 F.3d at 1246.

and the *Robbins* court reversed, holding that the complaint failed to state a claim under the new pleading standard set out by *Twombly*. *Id.* After discussing, at length, how *Twombly* had "clarified" the pleading standards, *Robbins* held that Plaintiffs' due process and equal protection claims were doubly insufficient because they failed to meet both the notice-pleading requirement and plausibility requirement established in *Twombly*. *Id.* at 1249-53.

Specifically, *Robbins* held that notice-pleading as to both claims had not been established because Plaintiffs failed to identify which Defendants committed which acts, instead referring to "defendants" collectively or relying on lists of defendants. *Id.* at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *see also id.* at 1253 ("Again, this section of the complaint fails to differentiate among individual defendants and specify which defendants are alleged to have taken which particular actions").[5] *Robbins* also held that the due process and equal protection claims were not sufficiently plausible to survive a motion to dismiss because Plaintiffs did not plead specific facts to

---

[5] *Robbins* also held that the grounds asserted for the equal protection claim were not sufficiently clear to meet the notice-pleading requirement. *See Robbins*, 519 F.3d at 1253.

support each element necessary to their claims, and the Court noted it had "no duty to 'conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one.'" *Id*. at 1252 (citing *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)); *see also id.* at 1253 ("As it stands, the complaint encompasses a broad range of imaginable circumstances, only some of which, if any, would entitle the plaintiffs to relief and therefore, 'stops short of the line between possibility and plausibility of entitlement to relief.'")(citing *Twombly*, 127 S.Ct. at 1966).

In relevant part, the *Robbins* court explained the new pleading standard as follows:

> As best we understand it. . . the opinion [*Twombly*] seeks to find a middle ground between "heightened fact pleading," which is expressly rejected, *Twombly*, 127 S.Ct. at 1974; *see also id.* at 1964 (a complaint "does not need detailed factual allegations"), and allowing complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," which the Court stated "will not do." *Id*. at 1965.

*Robbins*, 519 F.3d at 1247.  *Twombly* also noted that a claim must be "plausible" to state a claim.  *Twombly*, 550 U.S. at 556-57.  The *Robbins* court explained *Twombly*'s new requirement of plausibility as follows:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Id*. at 1974. . . .  This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it

is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S.Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin." *Id*.

*Robbins*, 519 F.3d at 1247 -1248.

Finally, *Robbins* cautions that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."  *Id*. at 1248.  Notably, in cases involving state actors who seek to avoid liability through qualified immunity, such as the case at bar,

The *Twombly* standard may have greater bite. . . appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation."  Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Robbins*, 519 F.3d at 1249 (internal citations omitted).  When applying the standard it articulated, *Robbins* further stated:

In § 1983 cases, defendants often include the government agency and a number  of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims

against him or her, as distinguished from collective allegations against the
state. *See Twombly*, 127 S.Ct. at 1970-71 n. 10.

*Robbins*, 519 F.3d at 1249-50.  *See also Stone v. Albert*,  338 F. App'x 757, 759 (10th Cir.

2009); *Briggs v. Johnson*, 274 F. App'x 730, 734 (10th Cir. 2008); *Shupe v. Wyoming Dept. of*

*Corrections*, 290 F. App'x 164, 167 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human*

*Services*, 276 F. App'x 843, 847 (10th Cir. 2008).

It is apparent that the Amended Complaint in the instant case is just the kind of

complaint that fails the specificity standard laid out in *Robbins*.  Consequently, I

recommend all federal claims against County Defendants be dismissed with prejudice.

Further, because Plaintiffs have failed to plead any federal claims sufficiently, I

recommend declining pendant jurisdiction as to the remaining state claims.

## II.  Analysis

Dismissal of Non-Defendants Included in the Motion:

As an initial matter, this Court notes that the Motion to Dismiss includes, as

movants, two individuals who are no longer defendants in this matter: Valerie Heredia

and Joe Jacques.  *See docs. 106, 107.*  I recommend disregarding the Motion to Dismiss as

to these individuals because they are not defendants in this case.

They are not defendants in this case because the Amended Complaint does not

list them as Defendants in the caption[6] as required by Federal Rule of Civil Procedure

10(a).  The Court has repeatedly advised Plaintiffs' counsel of this requirement.  *See*

*docs. 80, 88, 95, 96.*[7]  At the most recent hearing regarding Counsel's attempts to proffer

an acceptable amended complaint, Plaintiffs' counsel recognized the need to ensure that

the caption included all parties he wished to sue and did not include any parties he did

not intend to sue.  *See doc. 95.*

Due to the confusion regarding whether these individuals have been sued, I

---

[6]  In the Amended Complaint, Valerie Heredia appears only in the "Facts" section as "Investigator Heredia," *doc. 105* at paragraphs 29, 36, and 43, but she is not named in any of the twenty causes of action.

"Joe Jacques" makes no appearance whatsoever in the Amended Complaint. "Joe Jacquez," on the other hand, does appear in places.  I will assume for purposes of the Motion to Dismiss that "Joe Jacques" and "Joe Jacquez" refer to the same person. While he is not listed in the caption and is not listed separately as a defendant in the "Parties" section of the complaint, his name appears in a paragraph in the "Parties" section which alleges that the defendants "acted within the course and scope of their employment and under color of state law."  *Doc. 105* at paragraph 19.  The Amended Complaint also mentions Mr. "Jacquez" in the various causes of action.  *Doc. 105.*

[7]  Indeed, two of Plaintiffs' motions for leave to file an amended complaint were denied because of the failure to comply with Civil Rule 10(a).  *Docs. 88, 96.*  In one proposed amended complaint, Counsel simply listed the defendants in an "et al." posture.  *See docs. 83, 84.*  In another, Counsel listed defendants in the caption that differed from the defendants named in the section of the complaint entitled "Parties." *Doc. 90.*  Moreover, throughout the body of that proposed complaint there were some individuals referred to as "defendant" yet were never listed in the caption or "Parties" section, and there were some defendants listed in the caption or "Parties" section that were never mentioned in the body.  *Id.; see also doc. 96.*  As I stated in the last Order denying leave to amend, "In a case where there has been so much inconsistency regarding named defendants, it is essential Plaintiffs follow Federal Rule of Civil Procedure 10(a)."  *Doc. 96* at 1.

recommend the Court explicitly order that, if Plaintiffs intended to include them as Defendants, they have been dismissed without prejudice under Civil Rule 41(b) as a sanction for failure to comply with the civil rules and court orders.  *See* Fed. R. Civ. P. 41(b); *see also Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003)("Although the language of Rule 41(b) requires that the defendant file a motion to dismiss, the Rule has long been interpreted to permit courts to dismiss actions *sua sponte* for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders").

## *Plaintiffs' Federal Claims:*

Plaintiffs bring several claims under 42 U.S.C.A. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' . . .  The first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(internal citations omitted); *See also Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1197 (10th Cir. 1998).

## *Claim 1: "Deprivation of Liberty"*

 In Plaintiffs' first claim, they assert that their due process rights were violated. *Doc. 105* at 15-17.  It is not clear what factual event they claim violated their right to liberty, nor is it clear against whom they bring the claim.  This cause of action spans seven paragraphs in the Complaint.  *Id.*, ¶ 81-87.  Paragraph 81 incorporates "by reference the foregoing allegations in the above Paragraphs as though the same were set

forth in full below." *Id*. at 15-16.  Paragraph 82 states that Plaintiffs, "as pre-trial

detainees. . ." had a right not to be deprived of life, liberty, or property without due

process of law.  *Id*. at 16.  The next paragraph suggests a place for the alleged violation,

but not the actors or the event; it says ". . . . This deprivation of Plaintiffs' liberty rights

was done. . . at Plaintiffs' own homes and properties in Texas and New Mexico." *Id*.

Paragraph 84 states that Defendants knew their actions violated Plaintiffs' procedural

and substantive due process rights.  *Id*.  Paragraph 85 claims that "Defendants. . . knew

within minutes of initiating their raids. . . that no crimes were being committed. . . and

the subsequent incarceration of Plaintiffs' unconstitutionally deprived Plaintiffs' of their

liberty."  Paragraph 86 states that the county, city, and "Defendant Officers" are

"responsible for their actions described herewith," and that Animal Protection is

responsible for the actions of the Animal Cruelty Task Force and Heather Ferguson via

*respondeat superior*.  Finally, Paragraph 87 reads:

> That Defendants' deliberate and intentional disregard of the known
> constitutional rights of Plaintiffs was committed with deliberate
> indifference due to a failure to train and supervise Defendant Officers and
> in conspiracy to violate Plaintiffs' constitutional rights, described *supra*.,
> where the direct and proximate result of Plaintiffs' constitutional
> violations, for which Plaintiffs are entitled to recover compensatory,
> punitive and special damages, in an amount to be proven at trial.

*Id*. at 16-17.  The Court does not know what is meant by this paragraph, but it clearly

does not offer a factual nexus on which Plaintiffs base this claim.

Unfortunately, the two allegations that point to a factual nexus for the claim (*see*

20

Paragraphs 83, 85) appear to conflict: Plaintiffs' "subsequent incarcerations" did not

happen at either of their homes or rental properties; Daron Scott was arrested while at

work, and Duryea Scott turned himself in, presumably at a police station.  If Plaintiffs

instead (or in addition) seek to ground their claim on events that happened at their

properties, they have not said which events.  The "Facts" section of the Complaint

covers events that occur over nearly a year's span of time.  It alleges four raids in two

states and numerous related meetings involving different sets of Defendants, and the

Defendants themselves, presumably, represent different municipal and nonprofit

entities.

        This is exactly the type of claim that *Robbins* dictates cannot meet the pleading

standard.  Here, Plaintiffs allege a series of events over the course of eleven months

involving various state, county, and city actors and then assert a detached cause of

action–mostly by title rather than pleading– apparently hoping the Court will tie that

cause of action to whatever event is appropriate.  *Robbins* holds that a claim is

insufficient, and therefore subject to dismissal, where the allegations "are so general

that they encompass a wide swath of conduct, much of it innocent."  *Robbins*, 519 F.3d at

1247.  The pleading requirement is designed, in part:

> to inform the defendants of the actual grounds of the claim against them.
> "Without some factual allegation in the complaint, it is hard to see how a
> claimant could satisfy the requirement of providing not only 'fair notice' of the
> nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n. 3.
> *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th

> Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy
> that the complaint does not provide the type of notice of the claim to which the
> defendant is entitled under Rule 8.").

*Robbins*, 519 F.3d at 1248 (quoting *Twombly*, 127 S.Ct. 1955).  Furthermore, "[t]he

*Twombly* Court was particularly critical of complaints that 'mentioned no specific time,

place, or person involved in the alleged conspiracies.'  Given such a complaint, 'a

defendant seeking to respond to plaintiffs' conclusory allegations ... would have little

idea where to begin.'" *Id.* (quoting Twombly, 127 S.Ct. at 1971 n. 10).

Moreover, in claims such as these where Defendants assert the defense of

qualified immunity, *Robbins* held that the *Twombly* standard "may have greater bite"

because there is a "special interest in resolving the affirmative defense of qualified

immunity 'at the earliest possible stage of a litigation,'" and without allegations

"sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief, it

would be impossible for the court to perform its function of determining, at an early

stage in the litigation, whether the asserted claim is clearly established."  *Id.* at 1249.

(quoting *Twombly*. . .).  Thus, the *Robbins* court concluded that in § 1983 cases, it is

"particularly important . . .that the complaint make clear exactly who is alleged to have

done what to whom, to provide each individual with fair notice as to the basis of the

claims against him or her, as distinguished from collective allegations against the state."

*Id.* at 1250.

Plaintiffs' claim thus fails on two grounds: (1) Because it fails to identify

particular Defendants, and (2) Because Plaintiffs' Complaint requires Defendants (and the Court) to go on a fishing expedition through the lengthy allegations of fact ("a wide swath of conduct, much of it innocent") to issue spot which particular allegations may properly form the basis of the legal claim asserted several pages later with no tailored reference back to that particular set of facts.  Such a complaint cannot provide Defendants with the notice they are due under Rule 8, *Twombly*, or *Robbins*.

There is yet another reason this "cause of action" fails to state a claim.  Plaintiffs ground their "deprivation of liberty" claim in the Due Process Clause of the Fourteenth Amendment.   But, when a particular Bill of Rights provision has been made applicable to states by the Fourteenth Amendment and it "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273, (1994)(citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  *See also Copar Pumice Company, Inc. v. Morris*, 2007 WL 5685122, 4 (D.N.M.), CIV 07-79 JB/ACT.  The Supreme Court has specifically held that pretrial deprivations of liberty are governed by the protections of the Fourth Amendment and, therefore, are not cognizable as a substantive due process claim:

> The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not
be violated, and no Warrants shall issue, but upon probable cause,
supported by Oath or affirmation, and particularly describing the place to
be searched, and the persons or things to be seized." . . . . We express no
view as to whether petitioner's claim would succeed under the Fourth
Amendment, since he has not presented that question in his petition for
certiorari.  We do hold that substantive due process, with its "scarce and
open-ended" "guideposts," can afford him no relief.

*Albright*, 510 U.S. at 273-275(citing U.S. Const. Amend. IV; *Collins v. Harker Heights*, 503

U.S. 115, 125 (1992)).

Thus, I recommend that Plaintiffs' first claim as to all County Defendants be

dismissed both on account of its failure to meet the pleading standard and its failure to

assert a valid cause of action.

*Claim 2: "Substantive and Procedural Due Process"*

Plaintiffs' second claim asserts that their substantive and procedural due process

rights were violated, but, again, it is unclear what events or which defendants they

claim violated their rights.  Plaintiffs follow the same vague, seven-paragraph structure

for their second claim as they did for their first, and what assertions they make are

directed against the ambiguous category: "Defendant Officers."

Paragraph 88 incorporates "by reference the foregoing allegations in the above

Paragraphs as though the same were set forth in full below."  *Doc. 105* at 17.  Paragraph

89 states that Plaintiffs, "as pre-arrest detainees. . ." had a right "not to be deprived of

life, liberty, or property without substantive due process of law."  *Id*.  The next

paragraph appears to tie Plaintiffs' second cause of action to their first; it reads: "That the Fourteenth Amendment right includes a right not to be deprived of substantive due process of law.  This deprivation of Plaintiffs' liberty also violated their procedural and substantive due process rights in an arbitrary and capricious manner." *Id.*  Thus, it is possible they are referring back to their deprivation of liberty claim (claim one), which may have been based on their incarceration subsequent to their arrest or unspecified events that took place during the raids.  If Plaintiffs do intend to base this claim on the same "deprivation of liberty" asserted in the first claim, it is not clear how Plaintiffs intend to distinguish this claim from the first.  More confusing yet, it is equally possible they base this claim on other events that took place during the raids.  Paragraph 91 of the Complaint states:

> That the Defendants knew at the time of its actions, described *supra.*, including their failure to have arrest warrants to detain Plaintiffs at their homes without probable cause and the intentional failure to obtain search warrants violated Plaintiffs' procedural and substantive due process rights in an arbitrary and capricious manner. Defendant Officers also knowingly failed to inform Plaintiffs' of their rights to refuse searches, failed to inform Plaintiffs' of their Miranda Rights during questioning and failed to inform Plaintiffs that they could ask the Defendant Officers to leave their properties.

*Doc. 105* at 18.  Paragraph 92 then states that Defendants knew within minutes of initiating the raid that no crimes were being committed, and that Plaintiffs' detentions should have concluded immediately after the raid but instead lasted for hours, violating Plaintiffs' procedural and substantive due process rights.  *Id*.  Paragraph 93 states that

25

the county, city, and "Defendant Officers" are "responsible for their actions described herewith," and that Animal Protection is responsible for the actions of the Animal Cruelty Task Force and Heather Ferguson via *respondeat superior*.  Finally, Paragraph 94 reads the same as the final paragraph in the first claim, save for the replacement of one word, which, unfortunately, does not help the readability of the paragraph:

> That Defendants' deliberate and intentional disregard of the known constitutional rights of Plaintiffs was committed with deliberate indifference due to a failure to train and supervise Defendant Officers and in conspiracy to violate Plaintiffs' constitutional rights, described *supra*., were the direct and proximate result of Plaintiffs' constitutional violations, for which Plaintiffs are entitled to recover compensatory, punitive and special damages, in an amount to be proven at trial.

*Id.* at 18-19 (emphasis added)  The Court still does not know what is meant by this paragraph, but it clearly does not offer a factual nexus on which Plaintiffs base this claim.

From these allegations, it appears Plaintiffs might intend to base their second cause of action on (1) whichever events they use to ground their first cause of action, (2) "Defendant Officer's" failure to obtain search & arrest warrants, failure to inform Plaintiffs of their rights to refuse searches and order officers off their property, and failure to read *Miranda* rights prior to questioning, and/or (3) Plaintiffs' lengthy detentions during the raids.

There is not enough specificity here for the Defendants (or the Court) to know the grounds on which Plaintiffs' second cause of action rests.  In addition to the notice

problems inherent in such a complaint, without allegations "sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." *Robbins*, 519 F.3d at 1249.   Moreover, it is impossible to know against whom this claim is brought.  Neither the "Claims" section nor the "Facts" section lays out who all was present at each individual raid, let alone who performed particular functions.  Plaintiffs, thus, have not followed the *Robbins* mandate that "the complaint make clear exactly who is alleged to have done what to whom." *Robbins*, 519 F.3d at 1249-50.

Plaintiffs' claim thus fails on two grounds: (1) Because it fails to identify particular Defendants, and (2) Because it requires Defendants and the Court to guess what particular factual events ground Plaintiffs' claim.  Moreover, to the extent Plaintiffs base their substantive due process claim on their raid detentions, post-arrest incarceration or Defendants' failure to obtain search warrants, those claims are cognizable under the Fourth Amendment, and therefore Plaintiffs have not stated a substantive due process claim.  *See supra* discussion of claim one.  To the extent Plaintiffs seek to base their second claim on the officers' failure to read them *Miranda* rights prior to questioning them, "*Miranda* warnings are not a requisite of due process but a condition to the admissibility in a criminal prosecution of statements obtained from a defendant questioned while in custody or otherwise significantly deprived of his

freedom of action." *Betts v. Board of Ed. of City of Chicago*, 466 F.2d 629, 631 (7th Cir.

1972)(citing *Miranda v. Arizona*, 384 U.S. 436, 445 (1966)).

Finally, to the extent Plaintiffs seek to ground this claim on Defendants' failure to

inform Plaintiffs that they could object to the search or order the officers to leave,

Plaintiffs have not met the standard for a substantive due process claim.  To state a

claim under substantive due process, Plaintiffs must allege either that a fundamental

liberty interest has been infringed, or that the officers' conduct shocks the conscience.[8]

*Seegmiller v. LaVerkin City*, 528 F.3d 762, 767-69 (10th Cir. 2008).  To claim a violation

under a fundamental right theory, "a plaintiff asserting a substantive due process right

must both (1) carefully describe the right and its scope; and (2) show how the right as

described fits within the Constitution's notions of ordered liberty."  *Seegmiller*, 528 F.3d

at 769.  Plaintiffs have made no attempt here to describe the alleged fundamental right

or place it in a constitutional context.  Thus, they have not stated a claim under the

fundamental right theory.  Plaintiffs have also failed to allege that the officers' conduct

---

[8]  Because Plaintiffs challenge an executive, rather than legislative, action as a
violation of due process, the Court must consider both whether a fundamental liberty
interest is implicated and whether the officers' conduct shocks the conscience.  *See
Seegmiller v. LaVerkin City*, 528 F.3d 762, 767-69 (10th Cir. 2008)("[T]he 'shocks the
conscience' and 'fundamental liberty' tests are but two separate approaches to
analyzing governmental action under the Fourteenth Amendment. They are not
mutually exclusive, however. Courts should not unilaterally choose to consider only
one or the other of the two strands."); *see also Dias v. City and County of Denver*, 567 F.3d
1169, 1182 (10th Cir. 2009)(confining the *Seegmiller* two-test analysis to cases involving
executive actions).

was conscience-shocking, and the conduct as described in the "Facts" section of the

Complaint does not rise to that stiff level.  *See Chaves v. Martinez*, 538 U.S. 760, 774-75

(2003)(the plurality holding that aggressively questioning a suspect on his hospital bed

just after he had been shot did not shock the conscience); *see also Seegmiller*, 528 F.3d at

768.

Plaintiffs have also failed to state a procedural due process claim.  "In order to

prevail on a procedural due process claim, a plaintiff must demonstrate: (1) the

deprivation of a liberty or a property interest and (2) that no due process of law was

afforded."  *Narotzky v. Natrona County Memorial Hosp. Bd. of Trustees*, 610 F.3d 558, 564

(10th Cir. 2010)(quoting *Stears v. Sheridan Co. Mem. Hosp. Bd. of Trustees*, 491 F.3d 1160,

1162 (10th Cir. 2007)).  Plaintiffs have not attempted to explain what process they were

allegedly denied, much less who denied it or under what circumstances.  Therefore,

they have failed to state a procedural due process claim.

Thus, I recommend that Plaintiffs' second claim as to all County Defendants be

dismissed.[9]

---

[9]  Plaintiffs make conclusory substantive and procedural due process claims in most of their individualized claims, even those that, by their title, have nothing to do with due process.  *See doc. 105* at 16, 17, 18, 21, 22, 23, 25, 27, 29, 30, 31, 32. The due process analysis provided here is intended to cover the full extent of the due process claims put forward in the Amended Complaint.

*Claim 3: "Equal Protection"*

Next, Plaintiffs allege that their equal protection rights were violated.  The first two and last three paragraphs of the claim are virtually identical to the corresponding paragraphs of the last claim.  Paragraph 97 appears to be the crux of their claim, and it reads:

> That this Fourteenth Amendment right includes a right not to be selectively prosecuted under color of law, where no criminal activities were being undertaken by Plaintiffs.  These actions by Defendants violated Plaintiffs' equal protection rights because as pit bull owners, Plaintiffs were singled out and selectively prosecuted because of their race, African American.

*Doc. 105* at 19.  It is not clear to which events "[t]hese actions" refers, and it is not clear against which Defendants Plaintiffs seek to pursue this claim.  It is likewise unclear whether Plaintiffs are asserting they were singled out because of their status as pit bull owners or because of their race.

Besides the blatant notice problems with this claim, Plaintiffs have not pled enough to raise their claim above the conclusory level.  The Tenth Circuit in *Straley v. Utah Bd. Of Pardons* explained that "[t]he Fourteenth Amendment guarantee of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009)(citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  There, the plaintiff based his claim on his assertion that he was given a longer sentence than other Utah sex

offenders, and he alleged there were racial disparities and preferences for Mormons in

sentencing recommendations made by the parole board.  The Tenth Circuit affirmed the

district court's dismissal of the claim, stating: "Straley fails to identify any

similarly-situated individual that has been given any different or more beneficial

treatment. His bare equal protection claims are simply too conclusory to permit a

proper legal analysis."  *Straley*, 582 F.3d at 1215.  Similarly, Plaintiffs here have not

alleged that any similarly-situated individual has been treated differently than

themselves, and their claim stands naked without a hint of factual development.  Thus,

I recommend Plaintiffs' equal protection claim be dismissed as to all County

Defendants.

*Claim 4: "Unreasonable Search and Seizure (of Persons)"*

Plaintiffs next contend, via the title of their claim, that their persons were

unreasonably searched and seized.  *Doc. 105* at 20-22.  The seven-paragraph claim

largely mirrors Plaintiffs' first two claims, but in addition to asserting that they have

due process rights, Plaintiffs add language asserting their right not be searched or

seized unreasonably.  *See id.* at 21, ¶ 102, 103.  Although Plaintiffs clearly assert that

they are entitled to Fourth Amendment protection, they do not clearly articulate which

actors by what conduct violated their Fourth Amendment rights.[10]  Only two

---

[10]  The second paragraph of Plaintiffs' fourth claim reads: "That Plaintiffs' as pre-
arrest detainees in the custody and control of. . . [all Defendants] had a constitutionally

paragraphs in this section mention any facts that allegedly support the claim.  In

paragraph 104, the Amended Complaint recites as follows:  "That the Defendants knew

at the time of their actions, described *supra*, including its failure to have arrests warrants

or probable cause to obtain search warrants when Defendants knew which properties

were going to be raided violated Plaintiffs' procedural and substantive due process

rights in an arbitrary and capricious manner."  *Id.*  In the next paragraph, the Amended

Complaint claims that "the Defendants ascertained and knew within minutes of

initiating the raid on Plaintiffs' properties that no crimes were being committed, . . .

and, therefore, the detention of Plaintiffs' should have been concluded immediately

after the illegal raid, but instead the detentions lasted for hours . . .."  *Id.*, ¶ 105.  Even

these "facts" are essentially conclusory statements without support.  Moreover, the

Amended Complaint never identifies the individuals who committed the alleged

constitutional violations, but refers only to "Defendants."[11]  *Id.*

---

protected right not to be subjected to unreasonable search or seizure at their home
without arrest warrants or probable cause, such actions at Plaintiffs' own homes and
properties in Texas and New Mexico is presumptively unreasonable."  *Doc. 105* at 20-21.
The last clause of this paragraph is not a clear articulation that a violation of the
asserted right occurred, and this deficiency is common throughout the Complaint.  *See*
Claims 1-9, 11.

[11]  The second paragraph of this cause of action, just like with all the other causes
of action, does recite that "Plaintiffs' as pre-arrest detainees in the custody and control
of Defendants Doña Ana County, and City of Las Cruces, through their employees of
the Sheriff's Department, and Code Enforcement Departments, and the Defendant
Animal Protection of New Mexico, Inc. as administrator of the Animal Cruelty Task
Force of New Mexico, and its employee Heather Ferguson, and Defendant Officers,

Nor is it possible to utilize the "Facts" section of the Amended Complaint to ascertain the specific events and Defendants relevant to this claim.  The "Facts" section covers events that occur over nearly a year's span of time.  It alleges four raids in two states and numerous related meetings involving different, though never clearly delineated, sets of Defendants; additionally, the Defendants themselves, presumably, represent different municipal and nonprofit entities.  In the sixty-paragraph narrative, there are allegations of several detentions, searches of persons, interrogations, and, ultimately, arrests.[12]  *Doc. 105* at 7-15.

---

Robyn Gojkovich, Curtis Childress, Linda Maldonado, Travis Wells, Joe Jacquez, Mary Lou Ward, Officer Paul Richardson, Manny Hernandez, FNU Palmer, FNU Rubio, Darren White and Unknown Officers and City, County and State Employees, John and Jane Doe's 1 through 13, had a constitutionally protected right under the Fourteenth Amendment to the United States Constitution of equal protection under the law and any such actions at Plaintiffs' own homes and properties in Texas and New Mexico was and is presumptively unreasonable." *Id.*, ¶ 102.  However, nowhere in the cause of action does the Amended Complaint ascribe particular actions to any of these individuals or entities.  In fact, it is inconceivable that Plaintiffs were in the simultaneous "custody and control" of all these individuals.

[12]  Plaintiffs might base their illegal seizure of persons claim on any one of the following incidents: (1) 3 p.m. interrogation of Duryea Scott on August 8, 2007 at 2705 Green Tree Loop, Chaparral, New Mexico with Defendants Gojkovich and Maldonado in Defendant Gojkovich's patrol car (*doc. 105* at 10); (2) Defendant Gojkovich having Plaintiff Duryea Scott walk her around the property after the initial interrogation, while she and Defendant Maldonado continued to interrogate him (*see id.* at 11); (3) Plaintiff Duryea Scott sitting in his car on the property at 2705 Green Tree Loop post-interrogation, believing he was under arrest and having been told he was not allowed to leave the property (*id*. at 12); (4) Interrogation of Daron Scott at the 2705 Green Tree Loop property at approximately 6:30 p.m. on August 8, 2007 by Defendants Gojkovich and Maldonado in a patrol car (*id*. at 12); (5) Interrogation of Duryea Scott at the Humane Society on August 10, 2007 by Defendants Gojkovich, Maldonado, and

Plaintiffs' failure to identify specific actors and particular incidents of constitutional violations renders their claim insufficient.  A claim is not plausible, and therefore subject to dismissal, where the allegations "are so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247.  Thus, to be plausible, the claim must be tailored.  Plaintiffs' dartboard approach to pleadings fails "to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248.  It also prevents this Court from "perform[ing] its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." *Id.* at 1249.

Plaintiffs' Fourth Cause of Action thus fails on two grounds: (1) Because it fails to identify particular Defendants, and (2) Because Plaintiffs' Complaint requires Defendants and the Court to comb through "a wide swath of conduct, much of it innocent" to identify which particular allegations may properly form the basis of a legal

---

Ferguson (*id.* at 13); (6) Interrogation and detention of Daron Scott in the front room of his house at 11036 Wedge Lane, El Paso, Texas the evening of August 10, 2007 (*id.* at 13); (7) Detention and interrogation of Duryea Scott outside of his house at 5705 Creston Ave., El Paso, Texas during the evening of August 10, 2007 (*id.* at 14); (8) Arrest and incarceration of Plaintiff Daron Scott at his place of employment on October 18, 2007; (*id.* at 15); (9) Issuance of an arrest warrant for Duryea Scott, which resulted in Duryea Scott turning himself in for incarceration on October 18, 2007 (*id.*); (10) search of person of Duryea Scott (*id.* at 14); and (11) search of person of Daron Scott (*id.*).  The Court does not make any opinion as to the validity of any claim based on these grounds.  It is merely demonstrating how ambiguous Plaintiffs' conclusory claim is in light of the complex factual history alleged.

claim asserted several pages later with no tailored reference back to any particular set of

facts.  Plaintiffs have not followed the *Robbins* mandate that "the complaint make clear

exactly who is alleged to have done what to whom, to provide each individual with fair

notice as to the basis of the claims against him or her."  *Robbins*, 519 F.3d at 1249-50.  As

such, this claim fails to provide Defendants with the notice they are due under Civil

Rule 8, *Twombly*, or *Robbins*.  Thus, I find Claim Four fails to state a claim and

recommend it be dismissed.

*Claim 5: "Unreasonable Search and Seizure of Property (of Homes)"*

Next, Plaintiffs style a claim identical to Claim Four except that it is titled "(of

Homes)" and includes the statement that Plaintiffs have a right "not to have their

homes and properties be subjected to unreasonable search or seizure and any such

actions at Plaintiffs' own homes and properties in Texas and New Mexico was and is

presumptively unreasonable."  *Doc. 105* at 22-23.  Again, only two paragraphs in this

section mention any facts that allegedly support the claim.  In paragraph 111, the

Amended Complaint recites as follows:  "That the Defendants knew at the time of their

actions, described *supra*, including its failure to have arrests warrants, or probable cause

for investigation, or issued search warrants violated Plaintiffs' procedural and

substantive due process rights."  *Id.*  In the next paragraph, the Amended Complaint

states that "the Defendants ascertained and knew within minutes of initiating their

raids on Plaintiffs' properties that no crimes were being committed . . ., and the

detention of Plaintiffs' should have been concluded immediately after the illegal raid, but instead the detentions lasted for hours . . .." *Id.*, ¶ 112.

As in Claim Four, these "facts" are conclusory statements without support.  And, as in Claim Four, the Amended Complaint never identifies which Defendant did what.  Again, it is not clear to what "detentions" Plaintiffs refer.  As explained in my analysis of Claim Four, the "Facts" section of the Complaint includes allegations of several events (involving different sets of Defendants) that might be construed as a detention of one or both of the Plaintiffs.  In fact, the Amended Complaint does not explain how any alleged detentions of Plaintiffs' persons bear on the issue an illegal search or seizure of their homes.  Furthermore, it is unclear how Defendants "seized" Plaintiffs' homes, and nothing in the Complaint points to that legal conclusion.

Combing through their "Facts" section, and using the title of the claim as a navigator, Plaintiffs might base an illegal *search* of homes[13] claim on the following incidents:

(1) August 8, 2007 raid at Daron Scott's rented property in Chaparral, New Mexico (533 Luna Azul).  *Id.* at 7.

(2) August 8, 2007 raid at Duryea Scott's rented property in Chaparral, New Mexico (2705 Green Tree Loop).  *Id.* at 9.

---

[13]  The Court is construing "home" broadly here given that the body of the cause of action refers to illegal search and seizure of Plaintiffs' "homes and properties."

(3) August 10, 2007 raid at Daron Scott's home in El Paso, Texas (11036 Wedge Lane). *Id*. at 13.

(4) August 10, 2007 raid at Duryea Scott's home in El Paso, Texas (5705 Creston Avenue). *Id*. at 14.

For each of these raids, Plaintiffs name some Defendants specifically but always include the vague qualifier "and other Defendant Officers." *Id*. at 7, 9, 13, 14. Especially given that Plaintiffs have the benefit of counsel, there is simply too much guesswork required to posit against whom Plaintiffs assert this cause of action and what factual events they use to ground it. "[A] defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin," *Twombly*, 127 S.Ct. at 1971 n. 10. Plaintiffs have not met the pleading standard discussed at length above, and thus I recommend Claim Five be dismissed as to all County Defendants.

*Claim 6: "Unreasonable Search and Seizure of Property (of Vehicles)"*

Plaintiffs' next claim is essentially identical to Plaintiffs' fourth and fifth causes of action except that it is titled "(of Vehicles)" and includes the statement that Plaintiffs have a right "not to have their *vehicles* be subjected to unreasonable search or seizure and any such actions at Plaintiffs' own homes and properties in Texas and New Mexico was and is presumptively unreasonable." *Doc. 105* at 24, emphasis added. Again, Plaintiffs' only "factual" allegations are (1) that "Defendants" knew that their actions "violated Plaintiffs' procedural and substantive due process rights;" and (2) the

37

detentions lasted for hours instead of concluding "immediately after the illegal raid . . .." *Id.* at 25.  Again, it is not clear how Plaintiffs attempt to tie the fact of their detentions to a claim of illegal search and seizure of vehicles.  They do not allege that the search of the vehicles themselves lasted hours, and they do not allege that their cars were taken. Plaintiffs, again, also do not specify *which* Defendants violated their rights by illegally searching or seizing their vehicles.

The "Facts" section of the Complaint adds the following information regarding treatment of Plaintiffs' vehicles:

(1) During the August 10, 2007 raid at Daron Scott's home (11036 Wedge Lane, El Paso, Texas), Daron Scott's "vehicles" were searched by "Defendant Officers," who confiscated from the vehicles "keys, chains, a clorox bottle and chain swivels."  *Id*. at 14.

(2) During the August 10, 2007 raid on Duryea Scott's home (5705 Creston Avenue, El Paso, Texas), Duryea Scott's "vehicles" were searched by "Defendant Officers."  *Id*.

For the same reasons as those given in my analysis for Claim Five, I recommend dismissing Claim Six as to all County Defendants for failure to meet the pleading standard.

*Claim 7: "Unreasonable Search and Seizure of Property (of Confiscated Property)"*

Plaintiffs' next claim is nearly identical to Claims Four through Six except that it is titled "(of Confiscated Property)" and includes the statement that Plaintiffs have a

38

right "not to have their *property, i.e., seized computers and records,* be subjected to unreasonable search or seizure without probable cause. . . . and any such actions at Plaintiffs' own homes and properties in Texas and New Mexico was and is presumptively unreasonable."  *Doc. 105* at 26-27, emphasis added.  Again, Plaintiffs' only "factual" allegations are (1) that "Defendants" knew that their actions "violated Plaintiffs' procedural and substantive due process rights;" and (2) the detentions lasted for hours instead of concluding "immediately after the illegal raid . . .."  *Id.*  at 27.  Again, it is not clear how Plaintiffs attempt to tie the fact of their detentions to a claim of illegal search and seizure of computers and records.  They do not allege that the computer and records searches themselves lasted hours.  Plaintiffs, again, also do not specify *which* Defendants violated their rights by illegally searching and seizing their computers and records.

Plaintiffs, as always, incorporate the rest of their Amended Complaint, and the "Facts" section adds the following information regarding treatment of Plaintiffs' "computers and records":

(1) "Defendant Officers" confiscated Daron Scott's computers during their raid on his home on August 10, 2007 (at 11036 Wedge Lane, El Paso, Texas).  *Doc. 105 at 14.*

(2) "Defendant Officers" confiscated Duryea Scott's computers, tax documents, and receipt books during their raid on his home on August 10, 2007 (at 5705 Creston Avenue, El Paso, Texas).  *Id.*

39

Plaintiffs do not plead facts with sufficient particularity for Defendants (or the Court) to know which Defendants they allege were present at the two raids in El Paso, let alone to identify the "Defendant Officers" who allegedly confiscated Plaintiffs' computers and records. Plaintiffs, thus, have not met their burden of making clear "exactly who is alleged to have done what to whom," *Robbins*, 519 F.3d at 1250 (citing *Twombly*, 127 S. Ct. at 1970-71 n. 10), and therefore I recommend Claim Seven be dismissed as to all County Defendants.

*Claim 8: "Unreasonable Search and Seizure (No Probable Cause)"*

Next, Plaintiffs attempt to fashion a Fourth Amendment claim independent of the earlier ones based solely on lack of probable cause. They do not specify which particular conduct they believe violated their rights because it constituted a search or seizure and lacked probable cause. Again, they similarly fail to specify particular Defendants.

Structurally, this claim follows Plaintiffs' familiar seven paragraph structure, with the all but the third paragraph remaining virtually unchanged from preceding claims. The third paragraph reads:

> That the Fourth and Fourteenth Amendment rights. . . includes a right not to be searched and seized without an arrest warrant or property searched without a search warrant, since Defendant Officers in preparation for their raids knew that there was no probable cause for their actions, and therefore, made a plan of action to coerce, deceive, intimidate and harass the Plaintiffs into consenting to searches and interrogating Plaintiffs for hours on end until Plaintiffs relented to Defendant Officers intimidation.

40

Any search warrants issued were after the illegal raids and any consents were on their face defective because they were coerced.  Defendant Officers chose not to get warrants because there was no reasonable suspicion that a crime was afoot, or probable cause to believe that there were dog fighting events at the premises in violation of N.M.S.A. §30-18-1. *et seq*., or that events were planned there.  This deprivation of Plaintiffs' constitutional rights also violated their procedural and substantive due process rights in an arbitrary and capricious manner because any search warrants that were obtained, were done so after coercion, intimidation, and deceit by Defendant Officers after they had already detained and interrogated Plaintiffs and had searched their properties.

*Doc. 105* at 28-29.

It appears that this claim is meant to reassert all the previous Fourth Amendment claims in one claim which is based upon a conspiracy amongst the "Defendant Officers" to violate Plaintiffs' constitutional rights.  As an initial matter, it suffers from the same lack of notice-pleading described above - all the Defendants are lumped together without any attempt to describe who did what.  This observation leads to the more serious flaw in this claim.  There are no facts anywhere in the Amended Complaint that provide a factual basis for an allegation of such a conspiracy.  While reminiscent of the complaint deemed insufficient in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the instant Amended Complaint contains far fewer "facts" than the *Iqbal* complaint.  As established in *Iqbal*, such conclusory allegations are insufficient as a matter of law and I recommend Claim Eight be dismissed as to all County Defendants.

*Claim 9: "Fifth . . . And Fourteenth Amendment (Taking of Dogs Without Just Compensation)"*

Plaintiffs next assert, via the title of their claim, that their Fifth Amendment rights were violated when their pit bulls were confiscated without just compensation. *Doc. 105* at 30. They do not specify the particular Defendants against whom they make this claim. Moreover, other than asserting that they have Fifth Amendment rights and that pets constitute property, their claim is simply a regurgitation of language from the previous claims.

The "Facts" section of the Complaint adds the following information regarding the taking of Plaintiffs' dogs:

(1) "Defendant Officers" seized 31 dogs from Duryea Scott's rented property in Chaparral, New Mexico during the August 8, 2007 raid on his rented land. *Doc. 105* at 12.

(2) Unspecified defendants seized 14 dogs from Daron Scott's rented property in Chaparral, New Mexico during the August 8, 2007 raid on his rented land. *Id.*

(3) "Defendant Officers" seized 10 dogs during their raid on Daron Scott's home in El Paso, Texas on August 10, 2007. *Id.* at 14.

(4) "Defendant Officers" seized 13 dogs during their raid on Duryea Scott's home in El Paso, Texas on August 10, 2007. *Id.* at 14.

Nowhere in the body of the "Cause of Action" or in any other section of the Complaint do Plaintiffs identify which particular Defendants seized the dogs nor which

Defendant entity (or individual) maintained them after the seizure.  So, as with

Plaintiffs' other claims, it fails to meet the pleading requirements laid out in *Robbins*.

Moreover, even if Plaintiffs had identified particular Defendants for this cause of

action, their claim would be subject to dismissal for failure to plead the elements of a

takings claim.  The Fifth Amendment prohibits private property being taken for public

use without just compensation.  U.S. Const. amend. V.  It applies to the states through

the Fourteenth Amendment.  *See e.g. B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*,  531 F.3d

1282, 1299 (10th Cir. 2008).  In *Williamson County Regional Planning Com'n v. Hamilton

Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court imposed ripeness elements

on takings claims, one of which is the requirement that Plaintiffs seek just compensation

through available state procedures prior to bringing suit in federal court.  *Williamson*,

473 U.S. at 195.  That requirement has since become an established principle in Tenth

Circuit takings law: "a 'taking' is not complete until the State fails to provide 'just

compensation' for the property."  *Bateman v. City of West Bountiful*,  89 F.3d 704, 708

(10th Cir. 1996)(citing *Williamson*, 473 U.S. at 195).  District courts have made explicit

what is implicit in *Williamson*: that the attempt to secure just compensation via a state

proceeding is a pleading requirement for a takings claim.  *See Jones v. Wildgen*, 320 F.

Supp.2d 1116, 1134 -1135 (D.Kan. 2004)("plaintiffs have not alleged that they utilized a

state procedure to obtain compensation. Therefore, their just compensation claim is not

ripe."); *Schafer v. City of Waupaca*, 637 F. Supp. 176, 177 (E.D.Wis. 1986)("She does not

allege, however, that she has attempted to obtain damages or compensation in that proceeding, much less that she was unsuccessful in the attempt. Schafer has, therefore, failed to bear her burden of establishing this Court's jurisdiction over her claim.").

Similarly, here, Plaintiffs have failed to allege either that just compensation was sought and denied via a state venue or that they lack state recourse.  Indeed, Defendants asserted that Plaintiffs have remedies under state law in their Motion to Dismiss, *doc. 107* at 13, and Plaintiffs neither contested that allegation nor addressed Defendants' *Williamson* argument in their Response to the Motion to Dismiss, *doc. 109*. Thus, Plaintiffs have failed to demonstrate that their takings claim is ripe.  Therefore, due to the failure of the Plaintiffs to sufficiently identify the appropriate Defendants and the failure to plead any facts to satisfy the ripeness requirement, I recommend that Claim Nine be dismissed as to all County Defendants.

*Claim 10: "(Conspiracy)"*

Plaintiffs next allege that certain Defendants "conspired to seize Plaintiffs' dogs. . . in violation of Plaintiffs' constitutional rights."  *Doc. 105* at 31.  This time, Plaintiffs at least list the Defendants against whom they bring the claim: Dona Ana County, City of Las Cruces, Heather Ferguson, Robyn Gojkovich, Curtis Childress, Linda Maldonado, Travis Wells, Joe Jacquez, Mary Lou Ward, Paul Richardson, Manny Hernandez, FNU Palmer, FNU Rubio, Darren White, and unknown officers or city, county or state

employees:  John or Jane Does 1-13.  *Id.*[14]  Of course, it is still the full laundry list of previously named Defendants without any particularized allegations.

In their claim, Plaintiffs do not provide any further factual allegations to substantiate their conspiracy allegation, though they do, again, incorporate the rest of their complaint.  The "Facts" section adds the following conspiracy allegations:

(1) "All of the above named Defendants[15] and the Unknown Officers , City, County, and State Employees, John and Jane Doe's 1 though 13, later conspired to seize the Plaintiffs' pit bull terriers located in Dona Ana County, and in El Paso, Texas."  *Doc. 105* at 5-6.

(2) In anticipation of the raids, Defendant Gojkovich "conspired with the members of the Animal Cruelty Task Force of New Mexico, Defendant Animal Protection of New Mexico, Inc. and Defendant Heather Ferguson to conduct the raids and the other named Defendants to conduct the raids."  *Id.* at 7.

---

[14]  The City of Las Cruces and Darren White are not among those Defendants asserting the Motion to Dismiss.  Joe "Jacquez" is no longer a party to this suit.  *See supra* discussion of "Dismissal of Non-Defendants."  I address this claim as to the other named Defendants.

[15]  It is not clear who Plaintiffs mean by "All of the above named Defendants."  In the "Facts" section of the Complaint, only two Defendants were previously noted by name: Travis Wells and Paul Richardson.  *See doc. 105* at 5.  If Plaintiffs meant them, however, they would have more likely used the word "both" rather than "all."  The more likely scenario is that Plaintiffs mean every defendant implicated for any claim in this law suit, given that the "Parties" section of the Complaint comes "above" the "Facts" section and lists every defendant by name.

(3) "Defendant Officers Robyn Gojkovich, Curtis Childress, Linda Maldonado, Travis Wells, Joe Jacques, Mary Lou Ward, Paul Richardson, Manny Hernandez, FNU Rubio, FNU Palmer, and the other known and Unknown Officers and City, County and State Employees, John and Jane Doe's 1 though 13, and Heather Ferguson, conspired to ensure that an arrest warrant was issued against Plaintiffs Daron Scott and Duryea Scott, on allegations of dog fighting, when no evidence of dog fighting was ever found." *Id.* at 15.

(4) "Defendant Robyn Gojkovich and Defendant Curtis Childress and the other known and Unknown Officers and City, County and State Employees, John and Jane Doe's 1 though 13, conspired to ensure that a grand jury indictment was issued against Plaintiffs Daron Scott and Duryea Scott, by providing testimony of alleged dog fighting to the grand jury, with no evidence of dog fighting." *Id*.

"Allegations of conspiracy may, indeed, form the basis of a § 1983 claim. However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. 'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 534 (10th Cir. 1998)(quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)); *see also Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989); *Edge v. Payne*, 342 F. App'x 395, 399 (10th Cir. 2009)(quoting *Hammond v. Bales*, 843 F.2d 1320, 1323 (10th Cir. 1988): "the pleadings must specifically present facts showing agreement and concerted action. Conclusory

allegations, without supporting facts are insufficient").  As with Claim Eight, Plaintiffs

have alleged no specific facts showing an agreement.  The allegations they make are

wholly conclusory and insufficient to state a claim.  *See Iqbal,* 129 S.Ct. at 1949-50.

"Further, 'a deprivation of a constitutional right is essential to proceed under a §

1983 conspiracy claim.' Thus, to prevail on such a claim, 'a plaintiff must plead and

prove not only a conspiracy, but also an actual deprivation of rights.'"*Kennedy v. Smith*,

259 F. App'x 150, 154 (10th Cir. 2007)(quoting *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th

Cir.1990) and *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990)).  Plaintiffs'

conspiracy claim also fails because Plaintiffs have not adequately pled "an actual

deprivation of rights."  *Dixon*, 898 F.2d at 1449.  The underlying deprivation on which

the alleged conspiracy is based is the seizure of Plaintiffs' dogs.  To the extent Plaintiffs

claim the taking of their dogs violated their Fifth Amendment rights, that claim has

already been analyzed and found deficient in the analysis for Claim Nine above.  To the

extent Plaintiffs instead base their conspiracy claim on an underlying violation of their

Fourth Amendment right not to have their personal property (the dogs) seized, it does

not appear that they have brought that claim as a stand alone cause of action.  Even if

one infers that the Plaintiffs meant to include the dogs in Claim Seven (Unreasonable

Search and Seizure of Property (Of Confiscated Property)), Claim Seven is also deficient

due to a failure to identify particular Defendants and their improper conduct as

described above.

Plaintiffs had dogs seized from four locations in two different states at different times on two separate days.  Whether a Plaintiff (or both) was present during the raid and whether officers were searching the premises pursuant to a search warrant changed from raid to raid.  The groups of Defendants alleged to have been in attendance at each of the raids that led to the seizure of dogs also differ from raid to raid, though Plaintiffs always add the catch-all "and other Defendant Officers," leaving the Court and Defendants unable to determine with any precision who was allegedly involved with each raid.  Not knowing who was present at each raid renders ascertaining who the "Defendants" or "Defendant Officers" were who allegedly seized the dogs a study in divination.  "In § 1983 . . . . it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Robbins*, 519 F.3d at 1249-50.

Because Plaintiffs have failed to plead any specific facts to support their conclusory conspiracy allegations and have failed to properly plead the underlying constitutional violation, I recommend Claim Ten be dismissed as to all County Defendants.

*Claim 11: "Failure to Train and Supervise"*

In this section, Plaintiff begins by "incorporat[ing] herein by reference the foregoing allegations."  *Doc. 105* at 32.  However, the "foregoing allegations" include

48

absolutely no allegations about training, supervision, or the lack thereof.  Next,

Plaintiffs make the uncontroversial assertion that they "had a constitutionally protected

right under the Due Process Clause of the Fourteenth Amendment . . . not to be

deprived of his life or liberty without due process of law."  *Id.*  Next, Plaintiffs assert

that "the Defendant Officers knew at the time of their actions and failures to act, that

these acts and failures to act created a substantial risk of constitutional violations to the

Plaintiffs."  *Id.* at 33.  Again, it is unclear who "Defendant Officers" refers to in this

context.  Plaintiffs next allegation is that "Defendants Dona Ana County, the City of Las

Cruces and Defendant Officers for which immunity is waived under the New Mexico

Tort Claims Act, are responsible for their actions described herein, and Defendant

Animal Protection of New Mexico, Inc. is responsible for the actions of the Animal

Cruelty Task Force of New Mexico and Defendant Heather Ferguson under a theory of

*respondeat superior* for the actions of the private employees."  *Id.*  Ignoring the difficulty

of identifying who is allegedly responsible for whose actions, this allegation is incorrect

as a matter of law.  This cause of action alleges a constitutional violation and liability for

such cannot be based upon *respondeat superior*.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S.

658 (1978).

Finally, the Amended Complaint claims that "Defendant's deliberate disregard

of the known constitutional rights of Plaintiff's was committed with deliberate

indifference due to a failure to train and supervise Defendant Officers and in conspiracy

49

to violate Plaintiff's constitutional rights, described *supra*, where the direct and proximate result of Plaintiff's constitutional violations, for which Plaintiff is entitled to recover compensatory, punitive and special damages, in an amount to be proven at trial."  *Doc. 105* at 33.

It should first be noted that failure to train or supervise is technically not an independent constitutional violation.  It is more properly understood as a theory of liability by which a municipal employer can be held liable for an underlying constitutional violation committed by its employees.  Therefore, this "Eleventh Cause of Action" cannot stand on its own but must be considered as a theory of liability for one of the constitutional violations alleged earlier in the Amended Complaint.  *See Hinton v. City of Elwood*, 997 F.2d 774, 782 ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").  As such, I recommend dismissing this cause of action as an independent claim.[16]

Nonetheless, it is a useful time to discuss the sufficiency of the claims made against Dona Ana County in all the previous causes of action.  Assuming an underlying constitutional violation, in order to establish municipal liability "a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link

---

[16] As with all the other causes of action reviewed thus far, the Eleventh Cause of Action fails to satisfy the *Robbins* pleading standard because it does not sufficiently identify the Defendants.

between the policy or custom and the injury alleged." *Hinton*, 997 F.2d at 782 (citation omitted).   A municipal policy or custom may take the form of the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)(citations omitted).

The Plaintiffs have utterly failed to adequately plead this type of municipal liability.  First, as discussed above, Plaintiffs have failed to sufficiently plead any underlying constitutional violation.  Second, they present not one factual allegation to support the conclusory statement that the "deliberate disregard of the known constitutional rights of Plaintiff's was committed with deliberate indifference due to a failure to train and supervise Defendant Officers . . .." *Doc. 105* at 33.  Without such factual allegations, these conclusory statements do not meet the pleading standard announced in *Iqbal*.  Thus, even absorbing this "cause of action" into the previous ones, each of Plaintiffs' claims against Dona Ana County are subject to dismissal for failure to state a claim.

*Claim 20: "Punitive Damages"*

Next, Plaintiffs fashion a claim entitled: "Twentieth Cause of Action[,] Punitive Damages."  This is a request for remedy rather than a cause of action, and Plaintiffs do not tie their request to any particular violation or tortious incident.  Instead, Plaintiffs simply incorporate the rest of the Complaint, state that "[t]he actions of the Defendants,

set forth above, were intentional, malicious, and with reckless indifference toward

Plaintiffs.  The Defendants knew or should have known that their actions were

illegal,"and request punitive damages from "Defendants."   To the extent Plaintiffs are

seeking to establish a stand-alone claim based solely on their request for punitive

damages, I recommend dismissing the "cause of action" as to all County Defendants for

failure to state a claim.

_State Law Claims_

The remainder of Plaintiffs' claims (Causes of Action 12-19) are based on state

law violations.  Because I recommend dismissing all of Plaintiffs' federal claims against

County Defendants, I likewise recommend declining pendant jurisdiction over the

remaining state law claims and, thus, dismissing them without prejudice.[17]  The

Supreme Court has held:

> Needless decisions of state law should be avoided both as a matter of
> comity and to promote justice between the parties, by procuring for them
> a surer-footed reading of applicable law.  Certainly, if the federal claims
> are dismissed before trial, even though not insubstantial in a jurisdictional
> sense, the state claims should be dismissed as well.

---

[17]  Four pending Defendants are not movants in the Motion to Dismiss under
review herein – Darren White, City of Las Cruces, Animal Cruelty Task Force of New
Mexico, Inc., and Animal Protection of New Mexico.  However, the undersigned has
recommended the dismissal of those four Defendants for failure to serve. _Doc. 132_.  If
the presiding judge adopts that recommendation, then the recommendation contained
herein would resolve all remaining Defendants.  If, however, the presiding judge does
not dismiss all four of those Defendants, then  the recommendation with respect to the
exercise of pendant jurisdiction could change.

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  Later Supreme Court

precedent has interpreted this holding in *Gibbs* as a strong suggestion rather than a

mandate:

> When the balance of these factors [judicial economy, convenience,
> fairness, and comity] indicates that a case properly belongs in state court,
> as when the federal-law claims have dropped out of the lawsuit in its
> early stages and only state-law claims remain, the federal court should
> decline the exercise of jurisdiction by dismissing the case without
> prejudice. . . . [T]his statement does not establish a mandatory rule to be
> applied inflexibly in all cases. The statement simply recognizes that in the
> usual case in which all federal-law claims are eliminated before trial, the
> balance of factors to be considered under the pendent jurisdiction
> doctrine-judicial economy, convenience, fairness, and comity-will point
> toward declining to exercise jurisdiction over the remaining state-law
> claims.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)(citations removed).  Thus,

absent unusual circumstances, pendent jurisdiction should be refused where federal

claims have been dismissed. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 -1230 (10th Cir.

2010)(reversing a district court's grant of summary judgment on a state law claim and

holding that because pendent jurisdiction should have been denied, dismissal of

suspect's state law claims without prejudice was warranted); *see also Elliott Industries

Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1106 n.8 (10th Cir.

2005)("because we affirm the district court's dismissal of Elliott's antitrust claim for

failure to state a claim. . . there is no basis for federal question jurisdiction"); *Ashley

Creek Phosphate Co. v. Chevron USA, Inc.*,  315 F.3d 1245, 1264 n.18 (10th Cir. 2003).

Because I find no unusual circumstances in this case that would warrant a departure from the general rule, I recommend declining pendent jurisdiction and dismissing the state law claims as to all County Defendants without prejudice.

### III.  Conclusion

Thus, I recommend dismissing without prejudice the claims against Jacques and Heredia to clarify their legal status, and in the alternative, as a sanction; dismissing all federal claims against County Defendants without prejudice for failure to meet the pleadings standard; and declining pendent jurisdiction and dismissing the state law claims as to all County Defendants without prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE