IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARON SCOTT, and
DURYEA SCOTT,

        Plaintiffs,

v.                                                                                CIV 09-00797-JB/GBW

COUNTY OF DONA ANA, et al.,

        Defendants.

REPORT & RECOMMENDATION

This matter is before the Court on Plaintiffs' "Rule 60 Motion to Set Aside

Judgments and to Recuse Magistrate Judge Wormuth and the Honorable District Judge

Browning", *see docs. 145, 146,* and Defendants' Amended Motion for Costs and Attorney

Fees, *see doc. 141.*   Plaintiffs' Motion requests that the Court reconsider all prior

determinations[1] and that the reconsideration be done by judges other that Judge

Browning and myself due to our bias against Plaintiffs.  Defendants' Motion seeks to

recover costs ($700) and attorney's fees ($30, 973) because (1) they were the prevailing

---

[1]  As with many of Plaintiffs' pleadings, the most recent is not particularly clear.
In various places, it seeks (1) the striking of all prior orders and reports and
recommendation; (2) the vacatur of the dismissal orders of March 31, 2011; and (3) the
reconsideration of the dismissal of the federal claims.  Each of these requests is slightly
different.  For instance, certain federal claims were dismissed in an order not entered on
March 31, 2011.  *See e.g. Doc. 136.*   I will proceed under the assumption that Plaintiffs
are seeking vacatur and reconsideration of all dismissals which occurred over Plaintiffs'
objection.

party; (2) Plaintiffs' suit was frivolous; and (3) Plaintiffs' counsel unreasonably multiplied the proceedings.

Because the remand of this case to State court terminated subject matter jurisdiction over any matters implicating the merits of the underlying case, I recommend that Plaintiffs' Motion be denied.  Because the issues of fees and costs are only collateral to merits, this court retains jurisdiction over Defendants' Motion.  With respect to that Motion, I recommend that it be granted in part and denied in part.

## I.  INTRODUCTION

In July 2009, Plaintiffs filed their *pro se* complaints in state court against approximately 30 individuals.  The lawsuit arose out of the criminal investigation and prosecution of Plaintiffs by the District Attorney for the Third Judicial District in 2008. Defendants removed the case to this Court.  *Doc. 1.*  In December of 2009, following Defendants moving for dismissal and summary judgment, Plaintiffs obtained counsel, requested consolidation of their cases, sought leave to amend the complaint, and requested that the Court stay ruling on dispositive motions until a consolidated, amended complaint was filed.  *See docs. 6, 42, 47, 49, 51, 52.*  The case was referred to me for recommended disposition.  *Doc. 53.*

Over the next seven months, Plaintiffs repeatedly attempted to produce an amended complaint that complied with the rules of procedure.  *See generally docs. 63, 65, 66, 68, 75, 77, 80, 81, 83, 84, 87, 88, 90, 95, 96, 97.*  The fifth such attempt was free of

2

blatant violations of the civil rules and I granted leave to file the amended complaint. *See docs. 101, 104, 105.* Soon thereafter, Defendants filed a motion to dismiss and it was fully briefed. *See docs. 106, 107, 109, 111.* On March 10, 2011, I issued a Report and Recommendation recommending granting the motion and dismissing the case. *Doc. 133.* On March 30, 2011, Judge Browning issued an order adopting the recommendation that all federal claims should be dismissed,[2] but remanding the state claims. *Doc. 137.* Judge Browning entered a final judgment to that effect and, on April 5, 2011, mailed a letter advising the state court of the remand. *Docs. 138, 139.*

On May 2, 2011, Defendants filed a motion seeking costs and attorneys' fees pursuant to FED. R. CIV. P. 54, Title 28 § 1927 and Title 42 § 1988. *See docs. 140, 141.* That motion was fully briefed as of May 19, 2011.

Almost five months after the final judgment was entered, Plaintiffs filed a motion seeking reconsideration of the dismissal of the federal claims. *Docs. 145, 146.* Moreover, the motion sought to recuse both myself and Judge Browning, and have the reconsideration as well as the Defendants' motion for costs and fees ruled on by a different judge. *Id.* In that filing, Plaintiffs assert that recusal is required because of bias

---

[2] On February 18, 2011, I issued a Report and Recommendation recommending dismissal of four of the Defendants because they had not been timely served. *Doc. 132.* Judge Browning adopted this recommendation and those Defendants were dismissed on March 30, 2011. *Doc. 136.* Thus, when Judge Browning turned to the motion to dismiss recommendation the next day, all pending Defendants had joined in the motion to dismiss.

against them.  *Id.*  Plaintiffs point to the following as evidence of that bias: the timing

and decision on rulings, my comments in hearings, my alleged previous service as an

Assistant District Attorney, and Judge Browning's friendship with Defendant Darren

White.

## II.  JURISDICTIONAL ISSUES

A.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Request that
       Judgment be Set Aside.

       In part, Plaintiffs' instant motion requests "that this Court [ ] reconsider and

order [that] . . . the judgment on the federal claims [be set aside]."  *Doc. 146* at 18.  The

Court lacks jurisdiction to grant this relief.[3]

       "Federal courts have limited jurisdiction and they are not omnipotent."  *United*

*States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).  Rather, the federal courts may only

act within the areas that the Congress has statutorily authorized them to act.  *See id.*

(noting limitation of federal court power to those areas granted by Congress and

permitted by the Constitution).  Although a federal court may hear certain cases

removed from State court, "[i]f at any time before final judgment it appears that the

district court lacks subject matter jurisdiction, the case shall be remanded."  Title 28

U.S.C. § 1447(c).  Once a certified copy of the order remanding the case is "mailed by the

---

[3]  As discussed above, Plaintiffs' request for vacatur and reconsideration may be
broader than this statement.  *See supra* note 1.  This potential distinction makes no
difference to the jurisdictional analysis.

clerk to the clerk of the State court[, t]he State court may thereupon proceed with such case." *Id.* Orders remanding removed cases back to State courts are "not reviewable on appeal or otherwise." *Id.* § (d). "It is axiomatic that remanding a case to state court terminates the jurisdiction of a federal . . . district court."[4] *Hunt v. Acromed Corp.*, 961 F.2d 1079, 1081 (3d Cir. 1992); *see also BP Am., Inc. V. Okla. ex rel. Edmonson*, 613 F.3d 1029, 1033-34 (10th Cir. 2010). "Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once entered." *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir. 1984).

Therefore, I recommend denying Plaintiff's request for reconsideration and vacatur of the judgment dismissing the federal claims.

B.  The Court Continues to Possess Jurisdiction Regarding Defendants' Motion

Given the loss of jurisdiction over the merits of the case as a result of the remand, the question must be asked whether this Court has jurisdiction to rule on Defendants' pending motion for fees and costs.  Because it is a "collateral" matter, the Court retains jurisdiction.

---

[4] There exists some dispute as to the precise moment at which the federal court is divested of jurisdiction.  Federal courts have pointed to three different times: (1) immediately upon the issuance of the order to remand; (2) upon the federal court clerk's mailing of the remand order to the state court; and (3) upon the state court's receipt of the remand order.  *See* David A. Furlow, *Removal and Remand : When Does Federal District Court Lose Jurisdiction over a Case Remanded to State Court?*, 41 S.W.L.J. 999 (1987) (discussing cases).  This dispute is irrelevant in the instant case because all those moments have long past in the instant case.

The loss of jurisdiction over a case following remand to a State court is limited to issues connected to merits.  *See Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) ("[I]t is well established that a federal court may consider collateral issues after an action is no longer pending."); *see also United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004) [hereinafter *Grynberg*].  Among the issues that a Court may still address are those of sanctions, motions for attorneys' fees, and court costs.  *See Willy*, 503 U.S. at 138 (noting that Rule 11 sanctions could be assessed even where court never had jurisdiction); *see also Grynberg*, 389 F.3d at 1057; *Whitmore v. Statguard, LLC*, Civil Case No. 09-cv-01414-REB-MEH, 2010 U.S. Dist. LEXIS 102504, at *5 (D. Colo. Sept. 14, 2010) ("Even though I do not have subject matter jurisdiction over the merits of this case, I have jurisdiction to address the issue of sanctions.").

This Circuit has addressed in detail the two views concerning ruling upon motions for fees after subject matter jurisdiction has been terminated.  *See generally Grynberg*, 389 F.3d at 1038.  One such view was that utilized by the Ninth Circuit.  *Id.* at 1055.  The Ninth Circuit's view is that costs and fees may not be awarded absent subject matter jurisdiction because the statutes creating them intended that they be used in conjunction with jurisdiction-creating causes of action.  *Id.*

In contrast, this Circuit outlined the views on the same matter of the Seventh Circuit.  *Id.* at 1056.  The Seventh Circuit builds its view upon the notion that "courts that lack jurisdiction with respect to one kind of decision may have it with respect to

6

another." *Id.* (quoting *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926 (7th Cir.

2000)).  The Seventh Circuit "distinguished between the adjudicatory authority

governed by Article III and the legislative authority imposed by Article I." *Id.*  Relying

upon that distinction, the Seventh Circuit explained that statutory authorizations of the

courts to sanction and charge fees are exemplary of situations where an Article III case

or controversy can still exist even where one concerning the merits has been terminated.

*Id.* at 1056-57.

> This Circuit adopted the view of the Seventh Circuit:
>
> > We believe the Seventh Circuit takes the most thoughtful approach
> > and will apply its analysis for the purposes of [defendant]'s request for
> > attorney fees . . . .  There is no Article III roadblock in this instance.
> > [Defendant] has expended significant funds in defending this protracted
> > litigation.  It claims this injury is the result of a frivolous lawsuit, an
> > alleged injustice which may be redressed by an award of attorney
> > fees . . . .  The district court is not being asked to continue to consider the
> > merits of the underlying . . . case.

*Id.* at 1057.

Here, the same circumstances exist.  Although the underlying case has been

terminated and this Court's jurisdiction to consider any of the underlying merits of the

claim – such as Plaintiffs' reconsideration Motion – has ended, the question of

entitlement of Defendants to fees and costs did not end upon remand.  Rather, the

ramifications of Plaintiffs' conduct in this case continue and the motion for fees remains

within the ambit of this Court.

### III.  RECUSAL MOTION

In addition to seeking reconsideration of the dismissal of federal claims,

Plaintiffs' Motion asks that Judge Browning and myself be recused from further

proceedings in this case to include Defendants' pending Motion for costs and fees.

*Docs. 145, 146.*  Because I conclude this Court retains jurisdiction over Defendants'

pending Motion, I must address Defendants' recusal Motion.

A.  Federal Law of Recusal

The federal judicial system utilizes two provisions regarding the recusal of a

judge for actual or perceived bias.  *See* 28 U.S.C. §§ 144, 455.  Section 144 concerns the

ability of a party to move for a recusal.  *Id.* § 144.  Section 455, conversely, concerns the

*sua sponte* recusal of a judge – though a party may still move under that section for a

recusal.  *See* § 455; *see also United States v. Cooley*, 1 F.3d 985, 992-93 (10th Cir. 1993)

(discussing requirements in motion to recuse under section 455).

1.  *28 U.S.C. § 144*

Where a party believes that a judge is biased against him, that party may move to

have the judge removed and the proceedings heard by a different judge.  28 U.S.C.

§ 144.  "Under 28 U.S.C. § 144, [the party must file] an affidavit of bias and prejudice

[that is] timely, sufficient. made by a party, and accompanied by a certificate of good

faith of counsel."  *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987).  Moreover, "a

party may file only one such affidavit in any case."  28 U.S.C. § 144.

When a motion to recuse a judge is filed pursuant to section 144, the judge must "proceed no further" and "another judge shall be assigned to hear the proceeding." 28 U.S.C. § 144.  Nonetheless, "[t]he simple filing of an affidavit does not automatically disqualify a judge." *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).  The judge at issue is still entitled to – and, in fact, required to – consider the sufficiency of the filing.  *Id.*  The proscription against further action in section 144 means only that the factual allegations must be taken as true.  *Id.*; *see also In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004).  Where a filing is insufficient, the court may deny the motion and continue to oversee the case.  *See, e.g., Hinman*, 831 F.2d at 938-39.  An affidavit may be held to be insufficient where it is untimely, built upon conclusory allegations, or where it is incomplete.  *Id.*  The burden in a motion to disqualify a judge for lack of impartiality is "substantial [and rests upon] the moving party."  *In re McCarthey*, 368 F.3d at 1269.  These hurdles reflect the axiom that a "trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true."  *Bray*, 546 F.2d at 857.

  a. Timeliness

"A motion to recuse must be filed promptly after the allegedly disqualifying facts are discovered."  *Hinman*, 831 F.2d at 938.  Mere inclusion of some recent facts does not cure reference to untimely allegations.  *Id.*  Additionally, evaluation of the timeliness of a section 144 motion often includes consideration of "whether the affiant has

participated in substantial pre-trial motions between the time he first learned of the

asserted bias and the time he filed the § 144 request." *Franks v. Nimmo*, 796 F.2d 1233,

1234 (10th Cir. 1986).

When one reviews the bases of Plaintiffs' Motion, it is revealed to be untimely.

The primary bases provided by Plaintiffs for the recusal motion fall into three

categories.  First, Plaintiffs assert that the orders of the Court combined with comments

made at a hearing illustrate hostility.[5]  *See docs. 145, 146.*  Second, Plaintiffs allege that

bias is evident given that I was an Assistant District Attorney in the office and at the

time that the criminal prosecution against Plaintiffs' occurred.[6]  Finally, the Plaintiffs

state that Judge Browning's friendship with Defendant Darren White creates bias as

well.  I consider them in turn.

### i. *The Hearing, Report and Recommendation, and Order*

Even if a hostile reading of the Report and Recommendation and order adopting

---

[5]  The affidavit standing alone must be sufficient under section 144. *Hinman*, 831 F.2d at 939 ("The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances.  The doctrine of incorporation by reference has no place in a § 144 affidavit.").  Allegations in the motion are not incorporated into the affidavit when determining sufficiency.  *Id.*  In Plaintiffs' motion, they mention a hearing on one of the Motions for Leave to File an Amended Complaint and a transcript of that hearing is attached.  *Doc. 146,* Ex. 2.  However, the affidavits omit any mention of the hearing or how it demonstrated bias.  Nonetheless, out of an abundance of caution, when discussing timeliness I have considered the filing in its entirety.

[6]  The inaccuracy of this statement is not relevant under § 144 and is, thus, not discussed here.  It is, however, relevant under § 455.  *See infra* pp. 17-18.

the same were possible, the assertions of bias within them are clearly untimely.  The

hearing transcript that is attached to Plaintiffs' filing took place on March 25, 2010.  *Doc.*

*80.*  The Report and Recommendation at issue was filed on March 10, 2011.  *Doc. 133.*

The Order adopting that Report and Recommendation issued on March 31, 2011.  *Doc.*

*137, 138.*  In fact, the Court has taken no action whatsoever in the case since the April 5,

2011, letter advising the state court of the remand.  *Doc. 139.*  Thus, the Court's conduct

which Plaintiffs allege establish bias occurred between five and seventeen months

before the recusal was sought.  As this Circuit has aptly noted, "[t]he judicial process

can hardly tolerate the practice of a litigant with knowledge of circumstances

suggesting possible bias or prejudice holding back, while calling upon the court for

hopefully favorable rulings, and then seeking recusal when they are not forthcoming."

*Franks*, 796 F.2d at 1234.  The allegations of bias based upon the Court's orders or

conduct at hearings are clearly untimely.

### ii.  *Alleged Past Employment of Judge Wormuth*

Plaintiff claims that I was employed as "an Assistant District Attorney through

2009 in the Third Judicial District Court, . . . since the 1990's."  This fact, if true, would be

publicly known.  Neither in their motion nor in their affidavits do Plaintiffs even allege

that they learned this "fact" recently.  As such, they have not established that the

allegations based upon this "fact" were "filed promptly after the allegedly disqualifying

facts are discovered."  *Hinman*, 831 F.2d at 938-39 (burden of recusal is on movant and

11

affidavit is strictly construed against the affiant).

### iii. Judge Browning's Relationship with Darren White

On March 31, 2011, Judge Browning filed a letter to counsel regarding his limited

relationship with Darren White.  *See Duryea Scott v. Dona Ana County, et al.*, *2:09-cv-*

*00799-JB-GBW, doc. 62; see also Doc. 146* at 8 (Plaintiffs concede the relationship was

disclosed).  Plaintiffs' allegations about Judge Browning's relationship with Darren

White contain nothing not laid out in this letter.  So, allegations of bias based upon this

relationship are being made five months after they were disclosed to counsel.  This basis

is therefore untimely.

### b. Sufficiency of Affidavits

An affidavit establishing bias must be sufficient and "must state the facts and the

reasons for the belief that bias or prejudice exists."  28 U.S.C. § 144.  Recusal affidavits

are "strictly construed against the affiant, and there is a substantial burden on the

moving party to demonstrate the judge is not impartial."  *Hinman v. Rogers*, 831 F.2d

937, 939 (10th Cir. 1987).  Although section 144 prohibits the judge whose recusal is

sought from considering the veracity of alleged facts; "conclusions, rumors, beliefs, and

opinions are not sufficient to form a basis for disqualification."  *Id.* (*citing Berger v.

United States*, 255 U.S. 22, 34 (1921)).  Rather, the affidavit must "state with required

particularity the identifying facts of time, place, persons, occasion, and circumstances."

*Id.*  Moreover, mere incorporation of other documents into the affidavit is not enough to

constitute a sufficient allegation.  *Id.*

Even assuming their truth, the allegations in Plaintiffs' affidavits fall far short of meeting this standard.  Two affidavits are provided in support of claims of bias by the Court.[7]  One affidavit is offered by Plaintiff Daron Scott ("Daron's Affidavit").  The other is from co-plaintiff, Duryea Scott ("Duryea's Affidavit").

The majority and entire beginning of both affidavits feature a recitation of the circumstances that led to the underlying claim upon which the lawsuit was based.  *See Daron's Affidavit* ¶¶ 1-15; *Duryea's Affidavit* ¶¶ 1-20.  No reference is made to either Judge or even to the word bias at any point in those opening paragraphs.  *See id.*  Only in the four paragraphs preceding the final paragraph of each affidavit do the Plaintiffs actually refer to the Judges and this Court.  Those final paragraphs are identical save for affiants' names.  *See Daron's Affidavit* ¶¶ 16-20; *Duryea's Affidavit* ¶¶ 21-25.

In the first of the relevant paragraphs, the affiants assert that viewing the exhibits with this Court's rulings on "the Motion for Summary Judgment, the Motion to Dismiss and the Plaintiffs' Motion for Partial Summary Judgment" would lead a "fair and impartial court" to rule in favor of Plaintiffs because there are "issues of material fact

---

[7]Along with the affidavits and memorandum, Plaintiffs attached a transcript from a hearing and five pictures of dogs.  Neither of these documents are referenced within the affidavits.  At most, the transcript is indirectly referenced in the memorandum as evidence of bias – something that this Circuit does not accept.  *See Hinman*, 831 F.2d at 939 (noting that mere incorporation into affidavit is insufficient..  No more is said of the pictures.

that must be left to the jury." *Daron's Affidavit* ¶ 16; *Duryea's Affidavit* ¶ 21.  It is well established that adverse rulings are not grounds for disqualification.  *See Bray*, 546 F.2d at 857.  Therefore, the assertions in these paragraphs are insufficient to demonstrate the bias of myself or Judge Browning.

In the second set of relevant paragraphs, Plaintiffs allege that negative publicity biased the Court.  *Daron's Affidavit* ¶ 17, *Duryea's Affidavit* ¶ 22.  As the Plaintiffs make no specific reference to any specific media reports, to any amount of viewing of said reports by either judge, or to any real or reasonably perceived bias resulting from those reports, these paragraphs are conclusory and insufficient to demonstrate bias.

In the third set of relevant paragraphs, Plaintiffs point to the fact that I stayed their Motion for Partial Summary Judgment within twenty-four hours of its filing due to bias.  *Daron's Affidavit* ¶ 18; *Duryea's Affidavit* ¶ 23.  Once again, this represents nothing more than a conclusion of bias based upon an adverse ruling.[8]  *See Bray*, 546 F.2d at 857.  The assertions in these paragraphs are insufficient to demonstrate the bias of myself or Judge Browning.

The final relevant set of paragraphs simply state the conclusion that the "factual averments stated herein would cause a reasonable person, viewing the facts dispassionately, to believe that there exists a potential for the appearance of bias [of the

---

[8]  In fact, even describing the staying of briefing on a motion for partial summary judgment as "adverse" is an overstatement.  *See Doc. 130.*

judges] against myself Plaintiff Daron Scott and my brother Duryea Scott." *Daron's Affidavit* ¶ 19; *Duryea's Affidavit* ¶ 24.  These paragraphs contain no facts and are obviously conclusory.  As such, they are insufficient to demonstrate the bias of myself or Judge Browning.

### c. Conclusion Regarding 28 U.S.C. § 144

The assertions made in Plaintiffs' motion are untimely.  Moreover, the affidavits are insufficient to establish an appearance of bias.  As such, I recommend denial of the recusal under 28 U.S.C. § 144.

### 2. *28 U.S.C. § 455*

Even absent a motion, a "judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.  *See* 28 U.S.C. § 455(a).  Disqualification is specifically required where, *inter alia,* the judge "has a personal bias concerning a party" or where a judge "has served in governmental employment and in such capacity participated . . . concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."  *Id.* §§ (b)(1), (b)(3).  Grounds that are specifically enumerated in subsection (b) are not waive-able.  *Id.* § (e).  Where an unenumerated basis for recusal is asserted, waiver may occur.  *Id.*

Although there is a substantial overlap between circumstances justifying recusal under section 455 and section 144, *see Liteky v. United States*, 510 U.S. 540, 548 (1994)

15

("§ 144 . . . seems to be properly invocable only when § 455(a) can be invoked anyway"), the section 144 prohibition on consideration of the veracity of facts by the judge whose recusal is sought does not apply under § 455. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Further, unlike section 144, section 455 does not explicitly require an affidavit detailing all alleged bases of claims of bias. *See* 28 U.S.C. § 455. "The inquiry [in a section 455 motion] is limited to outward manifestations and reasonable references drawn therefrom . . . the initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (emphasis in original).

      a.  <u>Allegations are Insufficient</u>

           i.  *Assertions from §144 Affidavits*

As discussed above, the assertions in the §144 affidavits do not demonstrate bias. They are either based upon adverse rulings or are utterly conclusory. Just as they do not establish bias under §144, they do not establish bias under § 455. I will now turn to the assertions made in the motion, but not averred in the affidavits.

ii.  *My Alleged Service as an Assistant District Attorney.*

As further grounds for the recusal demand, Plaintiffs assert the following:

> In this case, Magistrate Judge Wormuth was an Assistant District
> Attorney through 2009 in the Third Judicial District Court, in which the
> Plaintiffs Daron Scott and Duryea Scott were prosecuted in the case
> number D-307–CR-2008-00236, from February 27, 2008, for Daron Scott
> and D-307-CR-2008-00235, from February 27, 2008 for Duryea Scott.  Both
> criminal cases were highly publicized and was[sic] well known in the
> District Attorney's office in Las Cruces, of which the Honorable
> Magistrate Wormuth had been an ADA prosecutor since the 1990's,
> therefore Judge Wormuth was well aware of the case during his time as an
> ADA and should have recused himself, or at least given notice that he was
> an ADA during the pendency of the criminal proceedings against Daron
> Scott and Duryea Scott.

*Doc. 146 at 12.*  In short, Plaintiffs assert that I was an Assistant District Attorney from

the "1990's" through 2009 in the same office prosecuting their case.[9]  These assertions

are absolutely false.  I was an active duty Army Judge Advocate General officer

stationed in Fort Sill, Oklahoma through January 2000.  Upon my departure from active

duty, I was immediately employed as an Assistant United States Attorney in the District

of New Mexico.  I held that position until my appointment as a United States Magistrate

Judge in May 2009.  I have never served as an Assistant District Attorney in the Third

Judicial District or elsewhere.[10]  Moreover, even during my time as a federal prosecutor,

---

[9]  It should be noted that this allegation does not implicate § 455(b)(3) because it
does not claim that I participated in the prosecution of the Plaintiffs.

[10]  These facts must not be entirely secret as Defendants in this case were aware of
my relevant professional background.  *See Doc. 147* ("Moreover, the claims regarding
Judge Wormuth's previous employment are out-and-out false.  As the Court is well

17

I had no awareness of, let alone involvement in, the Scott investigation or prosecution. Not only was I not personally involved with the Scott investigation or prosecution, I am confident that no federal prosecutor in the United States Attorney's Office for the District of New Mexico had any such involvement.  Given the true facts, no reasonable *factual* basis exists for calling my impartiality into question on the basis of my prior employment.

ii. *Friendship of Judge Browning and Darren White*

Friendship with an individual involved in a case alone is not enough to mandate recusal.  *Cheney v. U.S. Dist. Court*, 541 U.S. 913, 916-17 (2004) (Memorandum of Justice Scalia denying motion to recuse).  "The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised."  *Id.* at 914.

The *Cheney* recusal memorandum, cited by Defendants in their response (*Doc.* 147), is particularly compelling in analyzing the allegations regarding Judge Browning. In *Cheney*, respondents in a case pending before the Supreme Court filed a motion to recuse Justice Scalia under section 455.  Of primary justification for the motion was the friendship of Justice Scalia and the then-Vice President whose name appeared in the

---

aware, Judge Wormuth never worked for the Third Judicial District Attorney's Office. In fact, he was an Assistant United States Attorney for ten years prior to being appointed as a United States Magistrate Judge.").

caption of the case. *Id.* at 916. Particular emphasis was placed on the fact that the Vice

President had recently been one of twelve others on a hunting trip in Louisiana with the

Justice. *Id.* at 913-15.

Justice Scalia declined to recuse himself noting that if mere friendship alone were

enough, the procurance of justice from the courts could be permanently frustrated. *See*

*id.* at 916-17. In making that point, Justice Scalia referenced a great many justices whose

friendships with high-ranking government officials inspired such activities as poker

games and medicine ball workouts. *See id.*

Here, the allegations regarding Judge Browning's friendship with Darren White

pale in comparison to those Justice Scalia and his predecessors have treated as

acceptable. Judge Browning, by letter to counsel, made known his connections to

Darren White on March 31, 2011. *See Duryea Scott v. Dona Ana County, et al., 2:09-cv-*

*00799-JB-GBW, doc. 62.* In that disclosure, Judge Browning noted that although he

considers Mr White a friend and that he donated to Mr. White's campaign nine years

ago before becoming a judge. However, since Judge Browning's appointment to the

bench, they do not socialize beyond conversing when they happen to see each other. *Id.*

Plaintiffs do not allege any discussion of case material by Judge Browning. Nor do they

dispute the limited nature of encounters between Judge Browning and Mr. White in the

years since Judge Browning became a judge. In fact, the strongest statement Plaintiffs

can muster on this bias allegation is that the "relationship between District Court Judge

Browning and Darren White also gives pause as to the objectivity in the decisions that
this honorable court made in this case."

Further, as Defendants note in their Response, the dismissal of Mr. White by
Judge Browning came as a result of an indisputable failure to serve as required by Rule
4.  FED. R. CIV. P. 4(m).  Thus, even the most skeptical of observers would be hard
pressed to allege that bias – and not failure to serve – led to Mr. White's dismissal.

Finally, this claim of bias against Judge Browning is inexcusably untimely.  A
motion under section 455 must be timely filed.  *United States v. Cooley*, 1 F.3d 985, 992-93
(10th Cir. 1993).  "Although this circuit has not attempted to define the precise moment
at which a § 455(a) motion to recuse becomes untimely, our precedent requires a party
to act promptly once it knows of the facts on which it relies in its motion."  *United States
v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000).  Judge Browning disclosed his friendship
with Mr. White in March of 2011.  *See Duryea Scott v. Dona Ana County, et al., 2:09-cv-
00799-JB-GBW, doc. 62.*  The instant recusal motion was not filed until over five months
after that disclosure.  *See Daron Scott v. Dona Ana County, et al., 2:09-cv-00797-JB-GBW,
doc. 145.*  In the intervening time, Plaintiffs continued litigating this case without
objection.  *See e.g., doc. 142.*

b.  Conclusion Regarding 28 U.S.C. § 455

The assertions made in Plaintiffs' motion fall far short of establishing "a
reasonable *factual* basis exists for calling [Judge Browning's or my] impartiality into

20

question." *Cooley*, 1 F.3d at 993 (emphasis in original).  Moreover, the claim based upon

Judge Browning's relationship with Darren White is completely untimely.

Consequently, I recommend denial of the recusal under 28 U.S.C. § 455.

## IV.  COSTS AND FEES

Defendants have moved for costs pursuant to FED. R. CIV. P. 54 and Title 28

U.S.C. § 1920 and for reasonable attorneys' fees under FED. R. CIV. P. 54, Title 42 U.S.C. §

1988 and Title 28 U.S.C. § 1927.  I will consider each in turn.

A.      Costs under Rule 54 and Title 28 U.S.C. § 1920

FED. R. CIV. P. 54 provides that "[u]nless a federal statute, these rules, or a court

order provides otherwise, costs – other than attorney's fees – should be allowed to the

prevailing party."  "A party prevails for purposes of Rule 54(d) when a final judgment

awards it substantial relief."  *Smart v. Local 702 Intern. Broth. of Elec. Workers*, 573 F.3d

523, 525 (7th Cir. 2009).  A party need not prevail on all claims to be considered a

"prevailing party."  *See Roberts v. Madigan*, 921 F.3d 1047, 1058 (10th Cir. 1990).  In the

instant case, all of Plaintiffs' federal claims have been dismissed with prejudice.

Moreover, Plaintiffs' Response does not dispute that Defendants were a "prevailing

party" under the Rule.  Therefore, I recommend finding that Defendants were the

"prevailing party" under Rule 54.

Defendants' motion complies with the requirements of Rule 54(d)(2).[11]  They have established that they paid $700 for the filing fees to remove the action to federal court.  These fees are recoverable under Title 28 U.S.C. § 1920(1).  Plaintiffs' Response does not dispute the amount or recoverability of these fees.  Therefore, I recommend awarding Defendants' the amount of $700 under FED. R. CIV. P. 54 and Title 28 U.S.C. § 1920.

B.  Title 42 U.S.C. § 1988

The Court may award reasonable attorneys' fees to the prevailing party in a § 1983 action as part of the costs.  42 U.S.C. § 1988.  A defendant may recover attorneys' fees only if "the suit was vexatious, frivolous, or brought to harass or embarrass a defendant."  *Houston v. Morton*, 215 F.3d 1172, 1175 (10th Cir. 2000).  A suit is frivolous when it is "based on an indisputably meritless legal theory."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Despite having recommended dismissal of all of Plaintiffs' claims at one point or another, I do not find that their suit was frivolous as to meet this exceptional standard. The Plaintiffs' homes were raided by law enforcement agents who, it was later found by

---

[11]  Among the requirements for such a motion is that it be filed timely.  FED. R. CIV. P. 54 provides that "[u]nless . . . a court order provides otherwise, the motion must [ ] be filed no later than 14 days after the entry of judgment."  However, the local rules do provide otherwise permitting the motion to be filed within thirty days of the judgment.  *See* D.N.M.LR-54.5.  This deadline would have fallen on April 30 which is a Saturday.  Therefore the deadline became the next Monday, May 2, which is when Defendants' motion was filed.

the state court, lacked a valid warrant.  While a few of their claims, such as the

Substantive Due Process claim, were arguably frivolous from the start, the majority of

their claims were not so frivolous as to justify attorney's fees under this provision.  It

also must be noted that, although qualified immunity would have been a high hurdle

had the case proceeded further, this challenge does not make the entire suit frivolous.  If

it had been so, the court would not have toiled so long to coax a proper Amended

Complaint out of Plaintiffs.  Consequently, I recommend not granting attorney's fees

under 42 U.S.C. § 1988.

C.  Title 28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney or other person admitted to conduct

cases in any court of the United States or any Territory thereof who so multiplies the

proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct."  Fees are appropriate "where an attorney acts recklessly or

with indifference to the law [or] is cavalier . . . or when the entire course of proceedings

was unwarranted."  *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006)

(*quoting Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1268, 1278 (10th

Cir. 2005)).  The Tenth Circuit Court of Appeals has explicitly held that sanctions under

this provision do not require a finding of bad faith.  *See Dominion Video Satellite, Inc. v.*

*Echostar Satellite L.L.C.*, 430 F.3d 1269, 1279 n.6 (10th Cir. 2005) (*citing Braley v. Campbell*,

832 F.2d 1504, 1512 (10th Cir. 1987)).  The Court has explained that, in the context of

section 1927, "unreasonably and vexatiously" means in "reckless indifference to the

law." *Braley*, 832 F.2d at 1511. In fact, the Court endorsed the proposition that section

"1927 permits a court to insist that the attorney bear the costs of his own lack of care."

*Id.*  Courts must employ an "objective unreasonableness" inquiry when considering

such sanctions.  *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1201-02 (10th Cir.

2008).  In short, sanctions "under § 1927 are appropriate when an attorney acts

"recklessly or with indifference to the law."  *Dominion*, 430 F.3d at 1278.  The Court,

however, must ensure that § 1927 not be used in a fashion that would "dampen the

legitimate zeal of an attorney in representing his client.  *Braley*, 832 F.2d at 1512.

Therefore, "the power to assess costs against an attorney under § 1927 . . . is a power

which must be strictly construed and utilized only in instances evidencing a serious and

standard disregard for the orderly process of justice."  *Id.*  (citations and quotations

omitted).

When looking at Plaintiffs' counsel's conduct in this case, a pattern of reckless

indifference to the law emerges.  The pattern can be seen in three general categories: (1)

failure to comply with the procedural rules for filing an amended complaint; (2) failure

to follow the local rules with respect to the filing of surreplies; and (3) the failure to

comply with the substantive pleading requirements of a complaint in federal court.

1. _Failure to Comply with Procedural Rules for Filing an Amended Complaint_

On December 28, 2009, counsel entered his appearance on behalf of Plaintiffs who had been proceeding *pro se* in two related, but separately filed, cases. *Doc. 52.* At that time, the case had been pending for more than four months and several dispositive motions were pending. *See Docs. 6, 42, 47, 49.* Plaintiffs' counsel sought an immediate stay of the proceedings for a consolidation of the cases to "file an amended complaint." *Doc. 51.* Over the objection of Defendants, who protested about the length of expense of the case up until that point, the Court granted the stay.[12] *Docs. 59, 70.* Then began the attempt to get Plaintiffs to file a proper amended complaint. Plaintiff began by attempting to file his Amended Complaint without the opposing party's consent or the court's leave as required by the rules. *Doc. 63*; *see* FED. R. CIV. P. 15(a)(1)(B). This error

---

[12] As the Court explained at the time, "Plaintiff's Motion to Stay is essentially aimed at the pending dispositive motions. Specifically, there are three fully briefed motions to dismiss filed by different groups of defendants. Docs. 2, 10, 13; 6, 17, 27; 42, 44, 45. In addition, there are two defense motions for summary judgment filed on December 16 and 17, 2009. Docs. 47, 49. Neither plaintiff responded to these motions, presumably due to the retention of counsel by Plaintiffs on December 28 and his immediate motion for stay. Doc. 51, 52. It does not appear to be a wise use of judicial resources to rule on these dispositive motions until resolution of the pending motion to amend the complaint. Moreover, given the late entrance of Plaintiffs' counsel and his motion to stay, I find that the interests of justice would be served by giving Plaintiff an opportunity to respond to the motions for summary judgment. To that end, after the resolution of the motion to amend the complaint, I will set a new deadline for Plaintiff's response to the motions for summary judgment. Thus, the Court GRANTS Plaintiff's motion to stay by delaying further judicial action on the motions to dismiss until resolution of the motion to amend the complaint and by permitting a late response to the motions for summary judgment." *Doc. 70* at 2.

necessitated a telephonic hearing. *Doc. 65.*

On February 16, 2010, Plaintiffs' counsel filed his first Motion for Leave to File Amended Complaint. *Doc. 68.* The proposed amended complaint attached to the motion, however, was rife with problems. *Id.*, Ex. 1. After Defendants' Response, which pointed out some of these problems, the Court held a brief telephonic hearing to try to facilitate the filing of a proper amended complaint. *See docs. 73, 74, 75.* At the hearing, the Court discussed the problems it saw with the proposed amended complaint including its failure to comply with Rule 10 which requires that the "title of the complaint must name all the parties." FED. R. CIV. P. 10. Nonetheless, a week later, Plaintiffs' counsel filed a Reply to the Response to the Motion for Leave to Amend Complaint which did nothing to address the issues raised at the telephonic conference. *Doc. 77.* The Court then held an in-person hearing on the Motion at which the problems with the proposed amended complaint were exhaustively discussed with Plaintiffs' counsel. *See docs. 78, 80.* In addition to the more substantive problems, the Court repeatedly reminded counsel of the requirement of Rule 10. *Doc. 80.* Based on the pleadings and the hearing on the matter, the Court denied the first Motion for Leave to Amend the Complaint. *Doc. 81.*

While the Court and Defendants waited for an amended complaint to be filed properly, Defendants agreed to withdraw several of the dispositive motions which would be presumably mooted by the filing of an amended complaint. *See docs. 75, 76,*

*82.*

On April 8, more than three months after entering his appearance, Plaintiffs'
counsel filed his second Motion for Leave to File Amended Complaint.  *Doc. 83.*
Defendants objected to the motion based on the proposed amended complaint which
again contained a mish-mash of claims and parties.  Still, the Court was "not
prepared to conclude that every count, on its face, fails to state a claim or meet the Iqbal
pleading standards."  *Doc. 88.*  In response to the Defendants argument that their
"rights are prejudiced by the continuing costs, delay, and uncertainty created by the
Plaintiffs' unwillingness or inability to abide by the Rules of Civil Procedure," the Court
explained that "while the delay and missteps have been unfortunate, the Court does not
find that Plaintiffs have acted in bad faith."  *Id. (quoting Doc. 85* at 7).  On the basis of the
continued Rule 10 violations in the proposed amended complaint, however, the Court
denied the Motion.[13]  *Id.*

On June 10, 2010, Plaintiffs' counsel filed his third Motion for Leave to File
Amended Complaint.  *Doc. 90.*  Astonishingly, the new proposed amended complaint
still failed to comply with Rule 10.  Thus, the Court held another hearing to discuss the
continued problem.  *Doc. 95.*  The Court explicitly laid out the parties that appeared in
the caption, yet were not apparently sued in the body of the proposed amended

---

[13]  In this case, as the Order explained, compliance with Rule 10 was particularly
important given the confusion over who Plaintiffs were actually suing.  *Doc. 88* at 3.

complaint as well as the parties who were sued in the body but not listed in the caption. *Id.* For these reasons, the third Motion was denied. *Doc. 96.*

On July 9, 2010, Plaintiffs' counsel filed his fourth Motion for Leave to File Amended Complaint. *Doc. 97.* Despite many apparent problems with the new proposed amended complaint,[14] the proposed complaint at least complied with Rule 10 and Defendants gave up objecting. Thus, the fourth Motion was granted. *Doc. 101.* On August 5, 2010, more than seven months after entering his appearance and seeking a stay to file an amended complaint, Plaintiffs' counsel filed the Amended Complaint. *Doc. 105.*

Plaintiffs' counsel's conduct through this process repeatedly demonstrated reckless indifference to the rules governing complaints. Despite several hearings at which the Court repeatedly pointed to the rules being violated and repeatedly suggested how the problems may be corrected, Plaintiffs' counsel failed to comply with the rules. Consequently, under this category, I recommend the awarding of all attorney fees incurred after the filing of the second Motion until the filing of the Amended Complaint that related to the attempts to file an amended complaint. I select this moment because, when he filed the second Motion, the Court had twice[15] advised

---

[14] These problems are the same which led to the Recommendation of dismissal which exhaustively lists them. *See Doc. 134.*

[15] The first time was the telephonic hearing. *Doc. 75.* The second time was the in-person hearing. *Doc. 80.*

Plaintiffs' counsel about the basic requirements for filing a proper complaint, yet he

repeatedly failed to satisfy those requirements.  Based upon my review of Exhibit B

provided by Defendants, this amount would be $897.50.[16]  I recommend finding the

hourly rate and quantity of time charged on these matters to be reasonable.

### 2. *Failure to Follow the Local Rules with Respect to the Filing of Surreplies*

On October 14, 2010, Plaintiffs' counsel sought to file a surreplies with respect to

the Defendants' motions for summary judgment and dismissal.  *Doc. 117.*  "The filing of

a surreply requires leave of the Court."  D.N.M.-LR-Civ. 7.4(b).  Nonetheless, the same

day as his motion for leave to file surreplies was filed, Plaintiffs' counsel filed them

without permission.  *Docs.  118, 119.*  This action necessitated their striking from the

docket.  *Doc. 120.*  As the Court explained to Plaintiffs' counsel:

> Local Rule 7.4(b) states that the filing of a surreply requires leave of the
> Court. D.N.M.LR-Civ. 7.4(b). The Court has not granted leave to file a
> surreply on either motion, and thus Plaintiffs' supplements (docs. 118,
> 119) are premature and they shall be stricken from the docket. The Court
> will rule on the Motion for Leave (doc. 117) when it is fully briefed. If
> leave is granted for one or both motions, Plaintiffs will be permitted to file
> their surreply(s) at that time. As the standard of review is different for a
> motion to dismiss and a motion for summary judgment, the Court will not
> permit a consolidated surreply. In the event the Court grants leave to file a
> surreply for both motions, Plaintiffs will need to file two surreplies
> tailored to the relevant legal issues in their respective motions.

*Id.*  Still, when Plaintiffs' counsel filed his Reply to Defendants' Response opposing

---

[16]  This amount is the total of all entries on Exhibit B between (and including)
April 9, 2010 and August 5, 2010 with the exception of the August 4 entry for
withdrawal of the Ugalde Motion for Summary Judgment.  *Doc. 141*, Ex. B.

leave to file the surreply, it was "little more than a repackaging of the stricken surreply that Plaintiffs [sought] leave to file, and it even include[d] as 'exhibits' the very same affidavits the Court previously struck." *Doc. 128.* Not surprisingly, County Defendants promptly moved to strike the entirety of Plaintiffs' reply brief. *Doc. 124.* Undaunted, Plaintiffs' counsel opposed the motion to strike necessitating a Reply from Defendants. *Docs. 125, 126.* The Motion for Leave to File a Surreply was denied and the Motion to Strike was granted. *Doc. 128.*

Never in his pleadings seeking leave to file a surreply did Plaintiffs' counsel ever cite or address the standard governing the filing of surreplies.[17] He repeatedly attempted to file the pleading without leave of Court despite being advised of the rules.[18] Again, Plaintiffs' counsel's conduct was in reckless indifference to the rules. Consequently, under this category, I recommend the awarding of all attorney fees

---

[17] A motion for leave to file a surreply should be granted where the nonmoving party, in a reply brief, presents legal arguments or evidence not proffered in the original motion. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

[18] This recklessness toward the Rules is perhaps unsurprising given Plaintiffs' counsel's view of them as "minutiae." *Doc. 125* at 5. Unfortunately, the instant case is not the only one where Plaintiff's counsel's conduct has unreasonably multiplied proceedings in this Court. *See Margarita Villa, et al. v. Dona Ana County, et al., 1:09-cv-00976-BB-WPL, doc. 129* (recommending Plaintiffs' counsel "be removed from the federal bar due to his misconduct and repeated violations of court orders throughout this litigation.").

related to the Motion to Strike.[19]   Based upon my review of Exhibit B provided by

Defendants, this amount would be $2,987.00.[20]  I recommend finding the hourly rate

and quantity of time charged on these matters to be reasonable.

      3.  *Failure to Comply with Substantive Pleading Requirements of a Complaint*

      The failure of Plaintiffs' counsel to, despite five attempts, file a complaint which

met the requirements of *Robbins/Iqbal/Twombly* is detailed in my Report and

Recommendation on the matter.  *Doc. 133.*  The question becomes whether this failure,

as opposed to the tortuous process it took to get there,[21] should be sanctioned under §

1927.  As with my recommendation regarding sanctions under 42 U.S.C. § 1988, I

conclude that it should not.  As noted above, the Court must be cautious to ensure that

sanctions under § 1927 not "dampen the legitimate zeal of an attorney in representing

his client.  *Braley*, 832 F.2d at 1512.  Awarding sanctions in this category, on top of the

dismissal of Plaintiffs' federal claims, would risk doing so.  Consequently, I do not

---

    [19]  Thus, I am not recommending awarding attorney's fees incurred for
responding to the Motion for Leave to File a Surreply.  Despite the rule violation and
the failure to brief the proper standard in his motion, Plaintiffs certainly had a right to
seek leave to file a surreply.  Moreover, the original violation of the rules did not cause
Defendants any additional expense because it was struck *sua sponte*.

    [20]  This amount is the total of all entries on Exhibit B between (and including)
November 4, 2010 and December 3, 2010 with the exception of the entries on November
11, 19 and 22, 2010.  *Doc. 141*, Ex. B.

    [21]  The recommendations regarding sanctions for the process are detailed in
"category 1" above.  *See supra* pp. 25-29.

recommend awarding attorney's fees under this category.

    4. *Fees for Pursuing the Motion for Fees*

    Defendants also seek an award of attorney's fees for pursuing their motion for

fees.  Section 1927 provides for the award of "the excess costs, expenses, and attorneys'

fees reasonably incurred because of such conduct."  Certainly, the attorney's fees

incurred in filing Defendants' Motion for Fees was "because of [Plaintiffs' counsel's]

conduct.  Moreover, while the Court has not awarded all the attorney's fees sought by

Defendants, there is nothing unreasonable about their pursuit of the fees not awarded.[22]

Thus, I recommend finding that fees incurred in pursuing Defendants' Motion be

awarded.  Based upon my review of Exhibit B provided by Defendants, this amount

would be $2,584.00.[23]  I recommend finding the hourly rate and quantity of time

charged on these matters to be reasonable.

    5. *Motion to Set Aside and Recuse*

    Defendants also seek an award under §1927 for their fees in responding to

Plaintiffs' Motion to Set Aside and Recuse.  *Doc. 147.*

    As described herein, Plaintiffs' Motion is meritless on several grounds.  The

---

[22]  In fact, the undersigned recommended not awarding the majority of fees only in the greatest abundance of caution.  *See Braley*, 832 F.2d at 1512

[23]  This amount is the total of all entries on Exhibit B between (and including) April 8 and April 30, 2010, with the exception of the DLM entry on April 8 and the April 8 entry regarding venue/jurisdiction.  *Doc. 141*, Ex. B.

motion for reconsideration/vacatur is made when the Court was divested of jurisdiction almost four months before.  The recusal arguments are either untimely in the extreme or grossly inaccurate.  Moreover, the affidavits required under § 144 are not remotely close to sufficient.  Fees are appropriate "where an attorney acts recklessly or with indifference to the law [or] is cavalier . . . or when the entire course of proceedings was unwarranted." *Steinert*, 440 F.3d at 1221.  This standard is amply met with respect to the Motion to Set Aside and Recuse.  I recommend awarding Defendants' their attorney fees incurred in responding to the Motion.  So that Plaintiffs' counsel will have the opportunity to respond to the amount claimed by Defendants in any Objections he might file to this Report and Recommendation, I HEREBY ORDER Defendants to file their claim for attorney's fees for the Response and the proof thereof no later than three days from the date of this Report.

## V.  CONCLUSION

Based on the foregoing, I recommend that Plaintiffs' Motion to Set Aside and Recuse be denied in its entirety.  I recommend that Defendants be awarded $700 as costs under FED. R. CIV. P. 54 and Title 28 U.S.C. § 1920.  I recommend that Defendants not be awarded attorney's fees under Title 42 U.S.C. § 1988.  I recommend that Defendants be awarded $6468.50 for attorney's fees under Title 28 U.S.C. § 1927.  Finally, I recommend awarding Defendants the reasonable attorney's fees incurred in responding to Plaintiffs' Motion to Set Aside and Recuse under Title 28 U.S.C. § 1927.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE