## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DARON SCOTT, and DURYEA SCOTT,

     Plaintiffs,

vs.                                   No. CIV 09-0797 JB/GBW

DONA ANA COUNTY COMMISSIONERS; DONA ANA
COUNTY SHERIFF'S OFFICE; GARY KING; SUSAN RIEDEL,
Individually, and in her Capacity as Assistant District Attorney;
AMY ORLANDO, Individually, and in her Capacity as Assistant
District Attorney; SUSANA MARTINEZ, Individually, and in
her Capacity as District Attorney; CHUCK FRANCO, Undersheriff,
Individually, and in his Capacity as Undersheriff; TODD
GARRISON, Individually, and in his Capacity as Sheriff;
MICHELLE UGALDE, Individually, and in her Capacity as Dano
Animal Control Officer, S922; OFFICER FNU RUBIO, Individually
and in his Official Capacity; FNU HERDIA, Officer, Individually,
and in the capacity of Daso Officer, S573; JOE JACQUES,
Individually, and in his Capacity as Daso Officer, S566; RICHARD
SILVA, Magistrate Judge, Individually, and in his Capacity as Dona
Ana County Magistrate Judge; OLIVIA NEVAREZ-GARCIA,
Magistrate Judge, Individually, and in her Capacity as Dona Ana
County Magistrate Judge; HEATHER FERGUSON, Individually and
in her Official Capacity as an Employee of the Animal Protection of
New Mexico, Inc.; DONA ANA COUNTY HUMANE SOCIETY;
ALLEN DAVIS, Individually, and in his Capacity as Director of
Dona Ana County Humane Society; DEANISE MARTA,
Individually, and in her Capacity as Director of Dona Ana County
Humane Society; RUSSELL WARD, Individually, and in his
Capacity as Veterinary Technician; STEVE SCHMIDT, El Paso
Police Department Detective, Individually and in his Capacity as El
Paso Police Officer; GLORIA RAMOS, aka Gloria Mendez;
GERALDO PEREZ; UNKNOWN EL PASO POLICE OFFICERS;
UNKNOWN EL PASO ANIMAL CONTROL OFFICERS;
UNKNOWN ANIMAL CONTROL OFFICERS; JOSEPH
GUILLORY, Magistrate Judge, Individually and in his Capacity as
Dona Ana County Magistrate Judge; ANIMAL PROTECTION OF
NEW MEXICO, INC.; ANIMAL CRUELTY TASK FORCE OF
NEW MEXICO; CITY OF LAS CRUCES; OFFICER DARREN
WHITE; JOHN AND JANE DOE'S 1 THROUGH 13, Unknown
Officers and City, County and State Employees; DONA ANA
COUNTY, a local public body of the State of New Mexico;

OFFICER ROBYN GOJKOVICH, Individually and in her Official Capacity; OFFICER LINDA MALDONADO, Individually and in her Official Capacity; OFFICER MARY LOU WARD, Individually and in her Official Capacity; OFFICER PAUL RICHARDSON, Individually and in his Official Capacity; OFFICER CURTIS CHILDRESS, Individually and in his Official Capacity; OFFICER TRAVIS WELLS, Individually and in his Official Capacity a/k/a Travis Wells; OFFICER FNU PALMER, Individually and in his Official Capacity; and OFFICER MANNY HERNANDEZ, Individually and in his Official Capacity.

Defendants.

## MEMORANDUM OPINION AND ORDER OVERRULING THE PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Report and Recommendation, filed September 11, 2011 (Doc. 148)("Sept. 11, 2011 PFRD"); and (ii) Plaintiffs Daron D. Scott and Duryea Scott's Objections to Magistrate Judge Gregory Wormuth's Proposed Report and Recommendation and Supporting Memorandum, filed September 25, 2011 (Doc. 150)("Objections"). In the Sept. 11, 2011 PFRD, the Honorable Gregory B. Wormuth, United States Magistrate Judge, recommends that the Court deny the Plaintiffs Daron Scott and Duryea Scott's Rule 60 Motion to Set Aside Judgments and to Recuse Magistrate Judge Wormuth and the Honorable District Judge Browning, filed August 24, 2011 (Doc. 145)("Rule 60(b) Motion"), and that the Court grant the Defendants' Amended Motion for Costs and Attorneys' Fees, filed May 2, 2011 (Doc. 141)("Motion for Attorneys' Fees"). Because the Court agrees with Judge Wormuth and because Plaintiffs Daron Scott and Duryea Scott's Objections lack a sound basis in the law and the facts of this case, the Court will deny the Rule 60(b) Motion, overrule the Objections, and grant in part and deny in part the Motion for Attorneys' Fees. The Court will adopt the Sept. 11, 2011 PFRD except with respect to the recommendation that the Court award attorneys' fees against the Scotts

for filing their recusal motion.

## PROCEDURAL BACKGROUND

The Defendants originally removed this case to federal court in August 2009.  See Notice of Removal, filed August 14, 2009 (Doc. 1).[1]  From the outset, the litigation of this suit has been fraught with errors in following both the Federal Rules of Civil Procedure and the Court's Local Rules.  See, e.g., Order Granting Defendants' Motion to Strike and Denying Plaintiffs' Motion for Leave to File Surreply at 1-6, filed December 2, 2010 (Doc. 128)(detailing assorted failures in pleadings and rules adherence); Order to Show Cause at 1-2, filed January 12, 2011 (Doc. 130)(issuing Order to Show Cause for failure to list and/or serve certain defendants)

The Scotts originally filed their suits pro se; however, they eventually retained Augustine Rodriguez as shared counsel.  See Report and Recommendation at 10-11, filed March 10, 2011 (Doc. 133)("Mar. 10, 2011 PFRD").[2]  In the seven months after obtaining counsel, Plaintiffs experienced considerable difficulties in producing a complaint that complied with the rules of procedure.  See Mar. 10, 2011 PFRD at 11.  Judge Wormuth, to whom the Court referred this matter for a recommended disposition, held "no fewer than six hearings or conferences to discuss with Plaintiffs' counsel the proper procedure for filing an amended complaint, and perceived futility and sufficiency issues with Plaintiffs' claims as proposed." Mar. 10, 2011 PFRD at 11.  After five failed

---

[1]This case is a consolidation of two separate actions.  See Scott v. County of Dona Ana, No. CIV 09-0799.  The specifics underlying the cases have already been outlined in great detail in prior filings.  See, e.g., Report and Recommendation at 2-10, filed March 10, 2011 (Doc. 133).  Further, the underlying facts have no relevance to the Objections.  As such, the Court will not rehash the facts that led to filing this matter.

[2]Because the Plaintiffs do not object to the recitation of the background of this case outlined in the various PFRD's, and because the Court agrees with their characterization of this matter, the Court relies upon the PFRD's for the factual and procedural background in this Memorandum Opinion and Order.

attempts to submit a proper complaint, Judge Wormuth accepted a complaint from Plaintiffs that "did not blatantly violate any civil rule."  Mar. 10, 2011 PFRD at 11.

Following the filing of the Amended Complaint for Damages for Violation of Federal and State Law, filed August 5, 2010 (Doc. 105)("Amended Complaint"), the County Defendants[3] filed a motion to dismiss.  See Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 105) Pursuant to Rule 12(b)(6), filed August 19, 2010 (Doc. 106)("Motion to Dismiss").  Briefing on that Motion to Dismiss was completed on September 21, 2010.[4]  While the Motion to Dismiss was fully briefed and a ruling was pending, the Scotts filed a motion seeking partial summary judgment.  See Plaintiffs Daron D. Scott and Duryea Scott's Motion for Partial Summary Judgment and Supporting Memorandum, filed January 11, 2011 (Doc. 129)("Motion for Partial Summary Judgment").  As of that time, several Defendants added into the matter by Plaintiffs' Amended Complaint had still not been served.  See Order to Show Cause at 1-2.

Rather than attempt to address a motion that would dispose of issues against un-served defendants in a manner adverse to them, Judge Wormuth, sua sponte, ordered the Scotts to show cause why they had not served a number of Defendants who the Scotts had added in their Amended Complaint.  See Order to Show Cause at 1-2.  The Order to Show Cause specifically noted that

_____

[3]The Court will refer to the following Defendants as the County Defendants: (i) Dona Ana County; (ii) Robin Gojkovich; (iii) Linda Maldonado; (iv) Mary Lou Ward; (v) Paul Richardson; (vi) Curtis Childress; (vii) Travis Wells; (viii) John Rubio (named as Officer FNU Rubio in the case caption); (ix) John Palmer (named as Officer FNU Palmer in the case caption); (x) Valerie Heredia (named as FNU Herdia in the case caption); (xi) Joe Jacques; (xii) Manny Hernandez; (xii) Heather Ferguson; and (xiii) all unknown El Paso Animal Control Officers.

[4]In the time following completion of the briefing of the Dona Ana County Sheriff's Department Employees' Motion for Summary Judgment, filed December 17, 2009 (Doc. 49), the Scotts continued to file deficient motions for leave to file a surreply.  See, e.g., Motion for Leave to File Sur-Reply, filed September 24, 2010 (Doc. 115); Plaintiffs Daron D. Scott and Duryea Scott's Surreply to Defendants' Reply in Support of Its Motion to Dismiss and for its Motion for Summary Judgment, filed October 14, 2010 (Doc. 118).

because of "the relationship of [the non-service] with the pending dispositive motions including Plaintiffs' Motion for Partial Summary Judgment, the Court w[ould] stay further briefing on Plaintiffs' Motion for Partial Summary Judgment until further order of this Court."  Order to Show Cause at 2.  The Scotts responded to Order to Show Cause by explaining that they would not be continuing their suit against one set of newly named Defendants and would need discovery to serve others.  See Response to Order to Show Cause of January 12, 2011, at 1-2, filed January 24, 2011 (Doc. 131).  Judge Wormuth issued proposed findings and a recommended dismissal of the Defendants addressed in the Order to Show Cause, because the Scotts had neither complied with the rules for service nor cited any relevant basis in law for granting an extension of time.  See Report and Recommendation at 1, filed February 18, 2011 (Doc. 132)("Feb. 18, 2011 PFRD").

On March 10, 2011, Judge Wormuth issued another proposed findings and recommended disposition that addressed the fully briefed Motion to Dismiss.  See Mar. 10, 2011 PFRD.  Therein, Judge Wormuth recommended that the Court dismiss all claims against the County Defendants, because the Scotts had not met the requisite pleading standards.  See Mar. 10, 2011 PFRD at 1.

At the end of both the Feb. 18, 2011 PFRD and the Mar. 10, 2011 PFRD, Judge Wormuth included language explaining that the Scotts were entitled to object and setting March 7, 2011 and March 28, 2011 as the respective due dates for objections.  See Feb. 18, 2011 PFRD at 9; See Mar. 10, 2011 PFRD at 54.  The Scotts did not properly object to either PFRD.[5]  On March 30, 2011, the

_____

[5]The Scotts filed two documents that referenced the Feb. 18, 2011 PFRD and the Mar. 10, 2011 PFRD; however, neither document objected to these PFRD's or proffered law in support of granting the relief sought.  See Motion for Stay of Review and Deadlines on Report and Recommendation Doc. 133, filed March 24, 2011 (Doc. 134)("Motion to Stay PFRD on the Motion to Dismiss"); Motion to Lift Stay Imposed on Plaintiffs' Motion for Partial Summary Judgment, filed March 24, 2011 (Doc. 135)("Motion to Set Aside the Stay").  Specifically, Plaintiffs filed a Motion to Stay PFRD on the Motion to Dismiss and a Motion to Set Aside the Stay on the Scotts' motion for partial summary judgment.  Because each failed to recite any basis in law or fact for the relief sought, they were denied.  See Memorandum Opinion and Order Adopting Magistrate Judge's

Court issued an order adopting the recommendation of the Feb. 18, 2011 PFRD. See Memorandum Opinion and Order Adopting Magistrate Judge's Report and Recommendation, filed March 30, 2011 (Doc. 136)("Mar. 30, 2011 MOO").  The next day, the Court issued an order adopting in part the recommendation of the Mar. 10, 2011 PFRD. See Memorandum Opinion and Order Adopting Magistrate Judge's Report and Recommendation, and Denying the Plaintiffs' Motion to Stay (Doc. 134) and Motion to Set Aside Order to Show Cause (Doc. 135), filed March 31, 2011 (Doc. 137)("Mar. 31, 2011 MOO").  In the Mar. 31, 2011 MOO, the Court dismissed all of the Scotts' federal claims, but remanded the state claims to state court.  See Mar. 31, 2011 MOO at 5.

Approximately one month after the Court dismissed the Scotts' suit, the County Defendants filed their Motion for Attorneys' Fees.  See Doc. 141.  The County Defendants contend that their status as prevailing parties in a frivolous matter entitles them to attorneys' fees and that the Scotts have vexatiously multiplied the proceedings.  See Motion for Attorneys' Fees at 3-6.

Over three months later -- nearly five months after the case was remanded to state court -- the Scotts filed their Rule 60(b) Motion.  See Doc. 145.  The Scotts argue that both Judge Wormuth and the Court were biased against them; the Scotts assert that Judge Wormuth and the Court should, therefore, recuse themselves.  See Plaintiffs Daron Scott and Duryea Scott's Memorandum in Support of Rule 60 Motion to Set Aside Judgment and to Recuse Magistrate Judge Wormuth and the Honorable District Judge Browning at 1-2, filed August 24, 2011 (Doc. 146)("Memorandum in Support of Rule 60(b) Motion").  Further, because of the alleged bias, the Scotts request that a different judge reverse and reconsider the judgments -- whether the Plaintiffs mean one judgment, several judgments, or all judgments is unclear.  See Memorandum in Support of Rule 60(b) Motion

---

Report and Recommendation, and Denying the Plaintiffs' Motion to Stay (Doc. 134) and Motion to Set Aside Order to Show Cause (Doc. 135), at 3, filed March 31, 2011 (Doc. 137).

at 3 (requesting that the Court "set aside the judgment and reconsider the dismissal . . . of the federal claims and assign a new District Judge to review the issues and decide the pending motion for attorneys' fees").[6]  As the bases for their allegations of bias, the Scotts pose four questions:

1.  Was Magistrate Judge Wormuth's involvement in the criminal case against Daron D. Scott and Duryea Scott, as a [sic] Assistant District Attorney before Magistrate Judge Wormuth joined the federal bench, require [sic] him to recuse himself as a judge in the present case;

2.  Was Magistrate Judge Wormuth's actions [sic] in this case which led to the issuance of the Report and Recommendations show [sic] bias, or give the appearance of bias against Plaintiffs Daron Scott and Duryea Scott;

3.  Was District Court Judge Browning's friendship with Defendant Darren White cause for Judge Browning to recuse himself as a judge in the present case; and

4.  Was District Court Judge Browning's actions [sic] in this case to not allow an extension of time to file a response to the Report and Recommendation show [sic] bias or raise the appearance of bias against Plaintiffs Daron Scott and Duryea Scott.

See Memorandum in Support of Rule 60(b) Motion at 2.  Judge Wormuth issued the Sept. 11, 2011 PFRD without awaiting the Scotts' reply brief.  See Doc. 148.

The Sept. 11, 2011 PFRD recommends that the Court deny both the requests for reconsideration and recusal for several reasons.  First, Judge Wormuth concludes that the Court lacks jurisdiction to reconsider the merits of the case.  See Sept. 11, 2011 PFRD at 4-5.  After first noting the Court's continued jurisdiction over the fee motion, see Sept. 11, 2011 PFRD at 5-7, Judge Wormuth recommends denying recusal because of untimeliness, insufficiency of the supporting affidavits, and a lack of a demonstrated factual basis for recusal, see Sept. 11, 2011 PFRD at 9-21.  Finally, Judge Wormuth recommends that the Court grant the request for attorneys' fees on some

---

[6]As has been common in this case, the Scotts have cited to the state rules of procedure as the basis for reconsideration.  As a federal court, however, the Court will apply federal procedural rules.

matters and deny the request others.  See Sept. 11, 2011 PFRD at 21-34.  Specifically, Judge Wormuth indicates that the underlying suit was not frivolous and, thus, attorneys' fees are appropriate only for non-compliance with procedural rules and for vexatious multiplication of litigation.  See Sept. 11, 2011 PFRD at 9-21.  The Scotts filed their Objections to the PFRD at issue on September 25, 2011.[7]  See Doc. 150.

### LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  Accord Mar. 30, 2011 MOO at 2-5.  Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a magistrate judge's proposal: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also

---

[7]The Scotts have attached assorted pictures of animals and a fence to the Objections.  See, e.g., Doc. 151-6; Doc. 152-8.  The significance of these images attached to their Objections is not clear.  Inclusion of unreferenced exhibits, however, represents yet another failure to follow the Court's rules.  See D.N.M.LR-Civ. 10.5 ("A party may only file those pages of an exhibit which are brought to the Court's attention.").

receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Property, with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986), superseded by statute on other grounds as stated in De Vargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059.

In One Parcel, the Tenth Circuit, in accord with courts of appeals, expanded the waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.  The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the

Sixth Circuit's use of this waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added) (hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order"). The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 151-52 (footnotes omitted).

The Tenth Circuit has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting Moore

v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted))). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit also noted that the district judge had decided sua sponte to conduct a de-novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because such action would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F.App'x 795, 796 (10th Cir. 2007)(unpublished).

## ANALYSIS

The Scotts' Objections can be placed in three broad categories: (i) objections to the proposed finding that this Court does not have jurisdiction to consider their request for reconsideration;

(ii) objections to the proposed rejection of their demands for recusal; and (iii) objections to the recommendation that the Court impose attorneys' fees.  A party must file specific objections, if any, to a magistrate judge's proposed findings or recommended disposition within fourteen days of service.  See Fed. R. Civ. P. 72(b)(2).  The presiding judge considers these objections de novo.  See Fed. R. Civ. P. 72(b)(3); Garcia v. City of Albuquerque, 232 F.3d 760, 766-67 (10th Cir. 2000).[8]

## I.   THE COURT WILL ADOPT JUDGE WORMUTH'S JURISDICTIONAL RECOMMENDATION.

The Scotts' object to Judge Wormuth's conclusion that the Court lacks jurisdiction to reconsider the remand order.  The Scotts argue first that rule 60(b) provides jurisdiction for such a reconsideration.  The Court has considered and rejected this argument before.  See Archuleta v. Taos Living Ctr., 2011 WL 6013057, at *5-6 (D.N.M. Dec. 1, 2011)(Browning, J.)("The Court concludes that it does not have jurisdiction to review its remand order, which was based on a lack of subject-matter jurisdiction."); Allen v. Allstate Ins. Co., No. 08-0733, 2010 WL 519855, at *2-3 (D.N.M. Jan. 8, 2010)(Browning, J.)("The Court concludes that it does not have jurisdiction to review the remand order in this case."); Schoen v. Presbyterian Health Plan, Inc., Nos. 08-0687 and 08-0970, 2009 WL 2450227, at *2 (D.N.M. July 29, 2009)(Browning, J.)("The Court concludes that, under § 1447(d), it does not have authority to reconsider its decision to remand for lack of subject-matter jurisdiction, and that jurisdiction over the appeal lies in state court."); Chaara v. Intel Corp., No. 05-278, 2006 WL 4060670, at *6 (D.N.M. Nov. 21, 2006)(Browning, J.)(holding that

_____

[8]The Scotts recite the incorrect standard of review.  See Objections at 2-3 (describing the standard as "abuse of discretion").  Instead of citing the objections standard, the Scotts cite the standard of review applied by an appellate court reviewing a final order.  See Objections at 2-3.  The Court is not an appellate court, and the Scotts are not challenging a district court order.  Rather, this is a district court and the Scotts are challenging proposed findings and a recommended disposition.  The confusion ends up having no impact, however, as the standard the Court must apply is actually more favorable to the Scotts and, thus, even if the Court applied an abuse-of-discretion standard, the same result would follow.

-12-

"the Court is foreclosed from reconsidering its remand determination").  As Judge Wormuth explains, see Sept. 11, 2011 PFRD at 4-5, 28 U.S.C. § 1447(d) makes orders remanding cases back to state courts "not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d).  Courts have concluded that this provision "terminates the jurisdiction of a federal . . . district court."  Hunt v. Acromed Corp., 961 F.2d 1079, 1081 (3d Cir. 1992).  Accord BP Am., Inc. v. Okla. ex rel. Edmondson, 613 F.3d 1029, 1033-34 (10th Cir. 2010).  Section 1447(d), therefore, prohibits relief under rule 60(b) or any other mechanism.  Allen v. Allstate Ins. Co., 2010 WL 519855 at *3.  Consequently, the Scotts' objection based upon rule 60(b) is overruled.

The Scotts appear to argue that, under section 1447, the Court is divested of jurisdiction only regarding the state claims, and not of the federal claims.  See Objections at 7 ("[T]he analysis propounded by the Report and Recommendation dealt only with divesting subject matter jurisdiction of remanded claims back to state court.").  The Scotts cite no legal authority for this proposition, and the Court has found none.  In fact, even as to the federal claims, the Court can grant the relief the Scotts seek only by looking at the prior order of remand and determining that it was improper.  Such analysis would constitute review that section 1447 prohibits.  Thus, this objection is also overruled.  Having reviewed the jurisdictional analysis in the Sept. 11, 2011 PFRD and the Scotts' Objections to the same, the Court overrules the Objections and adopts the Sept. 11, 2011 PFRD's analysis on this issue.

## II.    THE COURT ADOPTS JUDGE WORMUTH'S RECUSAL RECOMMENDATION.

As Judge Wormuth notes, the Court must still address the issues of recusal for purposes of the Motion for Attorneys' Fees.[9]  See Sept. 11, 2011 PFRD at 8.  The Scotts move to recuse both

---

[9]Judge Wormuth also addressed whether the Court has jurisdiction over the Defendants' Motion for Attorneys' Fees.  See Sept. 11, 2011 PFRD at 5-7.  The Scotts do not object to this jurisdictional discussion, and the Court agrees with Judge Wormuth's analysis of the Court's

the Court and Judge Wormuth because of various alleged examples of bias. See Memorandum in Support of Rule 60(b) Motion at 8. Specifically, the Scotts argue that adverse rulings show bias against them, that Judge Wormuth's service as an Assistant District Attorney and involvement in the investigation of the Scotts demonstrates bias, and that the Court's prior relationship with a named defendant establishes bias. See Memorandum in Support of Rule 60(b) Motion at 7-16. Judge Wormuth proposed denying the recusal under both relevant statutes, specifically 28 U.S.C. §§ 144 and 455. See Sept. 11, 2011 PFRD at 15, 20-21.

Specifically, with regard to section 144, Judge Wormuth recommended the Court deny the Rule 60(b) Motion for two reasons. See Sept. 11, 2011 PFRD at 15. First, Judge Wormuth explained that the affidavits in support of the Rule 60(b) Motion were facially insufficient. See Sept. 11, 2011 PFRD at 15-20. Second, Judge Wormuth concluded that the Rule 60(b) Motion was untimely. See Sept. 11, 2011 PFRD at 15-20. The Scotts object to both of those bases. See Objections at 8-9. As to section 455, Judge Wormuth recommended that the Court deny the Rule 60(b) Motion, because the allegations of bias were insufficient. See Sept. 11, 2011 PFRD at 20-21. The Scotts object to that proposed finding and disposition as well. See Objections at 3-7.

## A.   THE SCOTTS' HAVE NOT COMPLIED WITH 28 U.S.C. § 144'S REQUIREMENTS.

Where a party believes that a judge is biased against him, he may file a "timely and sufficient affidavit [alleging] that the judge before whom the matter is pending has a personal bias . . . against him or in favor of any adverse party." 28 U.S.C. § 144.[10] If a timely and sufficient affidavit is filed,

---

continued jurisdiction over the motion for fees as a collateral matter. See Sept. 11, 2011 PFRD at 5 (citing Willy v. Coastal Corp., 503 U.S. 131, 138 (1992)).

[10]None of the Scotts' objections challenge the recitation of the law that Judge Wormuth proffered. Because the Scotts have not objected to those points, and because the Court agrees with Judge Wormuth's statements of the controlling law, the Court only briefly states the law herein. Cf.

the allegedly biased "judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  28 U.S.C. § 144.  "The affidavit [must] state the facts and the reasons for the belief that bias or prejudice exists . . . ."  28 U.S.C. § 144.  An untimely affidavit requires proof of "good cause" to be considered.  28 U.S.C. § 144.

Although the law commands that the judge shall "proceed no further," the mere filing of a section 144 motion "does not automatically disqualify a judge."  United States v. Bray, 546 F.2d 851, 857 (10th Cir. 1976).  Rather, the judge is both entitled to -- and, in fact, required to -- consider the sufficiency of the filing.  See United States v. Bray, 546 F.2d at 857.  The judge's investigation of sufficiency entails evaluating both whether the allegations rise beyond conclusory and whether the affidavits are timely filed.  See Hinman v. Rogers, 831 F.2d 937, 938-39 (10th Cir. 1987)(per curiam).  The burden on a party moving for the recusal of a judge is substantial.  See In re McCarthey, 368 F.3d 1266, 1269 (10th Cir. 2004).

## 1.    The Scotts' Affidavits Are Insufficient.

The Scotts object to Judge Wormuth's finding that the recusal motion was insufficient.  See Objections at 8.  The Scotts' objections, essentially, amount to no more than a repetition of the claimed justifications for recusal cited in the original Rule 60(b) Motion.  See Objections at 8.  Their objections are not persuasive.

Affidavits accompanying a section 144 recusal motion must "state the facts and the reasons for the belief that bias or prejudice exists."  28 U.S.C. § 144.  "[C]onclusions, rumors, beliefs, and opinions are not sufficient to form the basis for disqualification."  Hinman v. Rogers, 831 F.2d at 939.  The affidavits themselves must set forth the basis for the belief of bias; a party may not simply incorporate other documents or claims by reference into the affidavit.  Hinman v. Rogers, 831 F.2d

---

Fed. R. Civ. P. 72(b)(2) (requiring specific objections).

at 939 ("The doctrine of incorporation by reference has no place in a § 144 affidavit.").

The Court agrees with Judge Wormuth's conclusion that the Scotts' affidavits are insufficient.  See Sept. 11, 2011 PFRD at 12-15.  Both affidavits supporting the motion begin with identical, extensive recitations of the facts providing the basis for the underlying lawsuit.  See Sept. 11, 2011 PFRD at 13-14.  "Only in the four paragraphs preceding the final paragraph of each do the Plaintiffs actually refer to the Judges and this Court."  Sept. 11, 2011 PFRD at 13.[11]  As Judge Wormuth details, the remaining paragraphs are insufficient.  See Hinman v. Rogers, 831 F.2d at 939 ("The affidavit must state with required particularity the identifying facts of time, place, persons,

---

[11]Both affidavits contain virtually identical recitations in the final paragraphs.  See Affidavit of Daron Scott ¶¶ 16-19, at 4 (dated July 9, 2011), filed August 24, 2011 (Doc. 146-3)("Daron Scott Aff."); Affidavit of Duryea Scott ¶¶ 21-24, at 4-5 (dated July 8, 2011)(Doc. 146-4)("Duryea Scott Aff.").  Daron Scott's affidavit provides:

> 16.   I, Daron Scott believe that if the Motion for Summary Judgment, the Motion to Dismiss and Plaintiffs' Motion for Partial Summary Judgment are reviewed with accompanying exhibits, I believe that a fair and impartial court would rule in Plaintiffs' favor because there are issues of material fact that must be left to the jury.
>
> 17.   I, Daron Scott believe that the decision of Magistrate Judge Wormuth and the decision of District Court Judge Browning were biased against myself, Daron Scott and my brother Duryea Scott because of the negative publicity our case received in Las Cruces, New Mexico.
>
> 18.   I, Daron Scott believe that Magistrate Judge Wormuth stayed the Plaintiffs' Motion for Partial Summary Judgment within twenty four hours of its filing because of Magistrate Judge Wormuth's bias against myself and my brother Duryea Scott.
>
> 19.   The factual averments stated herein would cause a reasonable person, viewing the facts dispassionately, to believe that there exists a potential for the appearance of bias against myself Plaintiff Daron Scott and my brother Duryea Scott, on the part of Magistrate Judge Wormuth and District Court Judge Browning.

Daron Scott Aff. ¶¶ 16-19, at 4.

occasion, and circumstances."). Because section 144 is such a potentially powerful tool for a party to litigation, courts must require parties to comply with section 144's requirements to avoid abuse. As Professor James Moore has stated when discussing the sufficiency requirements for affidavits filed under section 144: "Since Section 144 is heavily weighted in favor of recusal, its requirements regarding an affidavit must be strictly construed to prevent abuse. A movant must precisely comply with the procedural formalities of an application to recuse. If there is any deviation, the party's application for disqualification should be denied."   12 J. Moore, Moore's Federal Practice § 63.62[1][a][ii][D], at 63-72 to 63-73 (3d ed. 2011)(footnotes omitted). Other courts, including the Tenth Circuit, have taken a relatively strict approach in enforcing section 144's requirements. See United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993)("Sykes' affidavit fails to satisfy the stringent requirements of section 144 in a number of respects."); Hinman v. Rogers, 831 F.2d at 939 ("The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances. . . . The affidavit is strictly construed against the affiant, and there is a substantial burden on the moving party to demonstrate the judge is not impartial."); United States v. de la Fuente, 548 F.2d 528, 541 (5th Cir. 1977)("No written request or affidavit was ever filed, and informal requests for recusal do not constitute sufficient compliance with 28 U.S.C. § 144.").

Rather than objecting to any of Judge Wormuth's characterizations of their affidavits, the Scotts simply reiterate their demands that their Motion for Partial Summary Judgment be fully briefed and reiterate their argument that staying briefing on the same was evidence of bias. See Objections at 8-9. The Scotts further contend that they "certainly do not have to allege more than that to show that something other than an impartial juridicial [sic] was making the decisions." See Objections at 9. As the Sept. 11, 2011 PFRD explains, the Scotts cannot rely on an adverse ruling to establish bias in section 144 affidavits. This legal tenet is well established. See United States v.

Bray, 546 F.2d at 857.[12]  Because the Scotts' only specific objection rests on a point that the law of this Circuit refutes, the Court overrules the objection and find that the Scotts' section 144 affidavits are insufficient as a matter of law.

### 2.    The Scotts' Rule 60(b) Motion Seeking Recusal Is Untimely.

A motion to recuse a judge under section 144 must be timely filed.  See 28 U.S.C. § 144 (discussing timing requirements of motion).  Timeliness under the statute includes the requirement that a "motion to recuse must be filed promptly after the allegedly disqualifying facts are discovered." Hinman v. Rogers, 831 F.2d at 938.  The judge against whom recusal is sought is required to consider the timeliness of the affidavits.  Hinman v. Rogers, 831 F.2d at 939-40.

In the Sept. 11, 2011 PFRD, Judge Wormuth concludes that the Scotts' motion to recuse was untimely.  See Sept. 11, 2011 PFRD at 15.  The Scotts argue that the motion was timely because "Rule 60 includes subsections that give up to a year of time in which to file a motion."  See Objections at 6.  The Scotts provide no legal authority, and the Court has found none, for the proposition that the rule 60(b)'s more general time limit should override the more specific statutory time limit in section 144.  When "there is a conflict between" a statute that more specifically applies to a matter and a general statute that also applies to the matter, the more "specific statutory language should control more general language."  Nat'l Cable & Telecomms. Ass'n v. Gulf Power Co., 534 U.S. 327, 335 (2002).  Additionally, such a rule could lead to illogical results given that recusal motions should ordinarily be filed while a case is pending, and rule 60 is ordinarily relevant only after a judgment is entered.  See Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1411 (5th

---

[12]As Judge Wormuth notes, it is far from clear that staying briefing on a motion even amounts to an adverse decision.  See Sept. 11, 2011 PFRD at 14 n.8.  The Scotts were not forbidden from filing the motion; Judge Wormuth did not strike the motion; neither Judge Wormuth nor the Court denied the motion; Judge Wormuth only imposed a hold on briefing and explained the basis for so acting.  See Order to Show Cause at 1-2.

Cir. 1994).  The Tenth Circuit has indicated that a party seeking recusal acts in an untimely manner when the party waits three months from the time the party becomes aware of the facts giving rise to the alleged basis for recusal -- which is a shorter period of time than the time the Scotts waited to file their Rule 60(b) Motion.  See Hinman v. Rogers, 831 F.2d at 939 ("Both affidavits are untimely.  The only factual allegations personal to petitioner refer to events, the latest of which occurred three months prior to the filing of the affidavit in No. 79-4049, and five months before the affidavit was filed in No. 79-4069.").  The United States Court of Appeals for the Seventh Circuit concluded that a party acted in an untimely manner when they waited two months to file their recusal motion.  See United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993).  As the Seventh Circuit explained:

> First, the affidavit was untimely.  Sykes' claim was based on the district court's remarks at the June 12, 1992 change of plea hearing.  Yet the affidavit was not filed until August 19, after Sykes already had been sentenced.  Two months after the allegedly prejudicial statement is certainly not "at the earliest possible moment" after discovery of the prejudice.

United States v. Sykes, 7 F.3d at 1339.

Additionally, courts have recognized that, when the party seeking recusal had a prior opportunity to move for recusal, courts should be more hesitant to grant a recusal motion when a party may have filed the recusal motion at a strategic time, such as after an adverse ruling or the entry of final judgment.  As the United States Court of Appeals for the Fifth Circuit discussed in a case involving 28 U.S.C. § 455(a):

> With those post-judgment motions, the Liljebergs dragged out the third case until the end of September.  While the motions were pending, the Liljebergs failed to raise disqualification.  Only after the district court denied the motions at the end of September did the Liljebergs commence their next salvo -- the 60(b)(6) motions.  They waited until October 1, 1993 (nearly a year after entry of the judgments in the first two cases), before filing their motions in the first two cases; in the third, they waited yet another month.

Obviously, the delay in the third case cannot be countenanced.  As of the alleged first date of knowledge of club membership, the judgment in that case had not been entered.  (As noted, it was entered one week later.)  As discussed, a party feeling there is a basis for disqualification must make that known to the court at the earliest possible moment.  Moreover, as noted, a § 455(a) recusal is self-executing; no affidavit (or in this case, "opinion poll") is necessary to present the claimed basis for disqualification to the court.

Had the Liljebergs acted promptly, the district judge could have considered disqualification before entering judgment on the pending summary judgment motion in the third case.  As our court has observed, "[i]f disqualification may be raised at any time, a lawyer is then encouraged to delay making a § 455(a) motion as long as possible if he believes that there is any chance that he will win at trial.  If he loses, he can always claim the judge was disqualified and get a new trial."

As for the first two cases, it is certainly reasonable to suspect that the delay in filing the motions in those cases was also for the purpose of hoping not to impede a favorable decision in the third.  Therefore, the delay in seeking recusal in the third action colors that for the first two.  Had the recusal motions in all three actions been filed promptly after the alleged first date of knowledge of club membership, this might have assisted the district judge in determining recusal in the third case, for which judgment had not been entered.  Accordingly, we will not separate the timeliness issue for the first two cases from the third.  To do so would simply reward the Liljebergs for waiting on the result in the third case before seeking recusal in the first two.

Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d at 1411 (footnotes omitted)(citations omitted).

The United States Court of Appeals for the Eighth Circuit similarly concluded:

Plaintiffs knew, or with due diligence could have known, that Medtronic is a significant client of Fredrikson & Byron, and that Judge Kyle's son is a shareholder of the firm, before the Judicial Panel transferred this litigation to Judge Kyle.  Thus, the recusal motion was untimely.  It was also a device "interposed for suspect tactical and strategic reasons" following the district court's adverse rulings.  As the grant of such a belated motion would have serious adverse effects on the efficient use of judicial resources and the administration of justice, "on this basis alone, the district court's . . . denial of the recusal motion is affirmed."

In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1209 (8th Cir.

2010)(alteration in original)(citation omitted).

Accepting the Scotts' argument would permit litigants to wait a year after a final judgment

-20-

to move for recusal of the trial judge regardless of when the relevant information came to their attention. On March 31, 2011, for instance, the Court notified the parties of its contact and relationship with Defendant Darren White. See Letter from the Court to the Parties at 1-2 (dated March 31, 2011), filed March 31, 2011 (Doc. 62 in No. CIV 09-0799)("Letter"). Even though this Letter directed the parties to notify the Court's courtroom deputy if they had any concerns about the disclosure, a great deal of time passed until the Scotts' filed their Rule 60(b) Motion on August 24, 2011. This timing supports the conclusion that the section 144 motion to recuse is untimely, as the motion appears to be more about the adverse ruling than about the Court's relationship with White. If that relationship was of concern to the Scotts, they should have filed the Rule 60(b) Motion promptly after the disclosure. The Court rejects the Scotts' argument and overrules the objection regarding the timeliness of the section 144 motion. Notably, these same timeliness considerations would apply to the section 455 aspect of the Scotts' Rule 60(b) Motion.

### B. THE SCOTTS' RULE 60(b) MOTION DOES NOT MEET THE STANDARD REQUIRED UNDER 28 U.S.C. § 455(a).

The Scotts object to Judge Wormuth's analysis of section 455 by citing various alleged grounds for a finding of bias.[13] See Objections at 3-6, 8. Where a judge's "impartiality might

---

[13]The Scotts' Objections do not reference two previously asserted grounds of alleged bias: (i) the inaccurate assertion that Judge Wormuth previously served as an Assistant District Attorney and was involved in the criminal investigation of the Scotts; and (ii) the contention that the Court was biased because of a friendship it disclosed early in the case with a party who had been dismissed early in the case. On these points, the Court adopts Judge Wormuth's reasoning. On the issue with White, the Court would guess that it has been a few years since it has seen White. The last time may have been at the Governor's Prayer Breakfast early in the Richardson administration or possibly at a movie theater. The Court has also had cases involving White since it became a judge, and despite disclosures similar to those made in this case, no one has, to the best of the Court's memory, moved to recuse or questioned the Court's impartiality on that basis. See, e.g., Letter from the Court to the Parties at 2 (dated June 16, 2008), filed June 16, 2008 (Doc. 33), Kerns v. Bd. of Comm'rs of Bernalillo Cnty., No. CIV 07-0771 JB/ACT (D.N.M.). Furthermore, the Court has previously ruled against White, including in a recent case in which the Tenth Circuit reversed the Court and determined that the Court should have dismissed claims against White. See Kerns v. Bd. of

reasonably be questioned" a judge must disqualify himself even absent a motion.  28 U.S.C.

§ 455(a).  Specifically, section 455 requires that a judge recuse himself "[w]here he has a personal

bias or prejudice concerning a party . . . [, w]here he has served in governmental employment and

in such capacity participated . . . concerning the proceeding or expressed an opinion concerning the

merits of the particular case in controversy."  28 U.S.C. § 455(b)(1), (3).  In considering a motion

under section 455, a judge may consider the truth of the allegations proffered against him.  See

Liteky v. United States, 510 U.S. 540, 548 (1994)(distinguishing approach to section 455 relative

to section 144).  In a section 455 recusal, the court asks whether "a reasonable factual basis exists

for calling the judge's impartiality into question."  United States v. Cooley, 1 F.3d 985, 993 (10th

Cir. 1993)(emphasis in original).

### 1.    Staying Further Briefing on the Scotts' Motion for Partial Summary Judgment Does Not Require Recusal Under Section 455.

Again, adverse rulings are not a basis for concluding that a judge is biased.  See United

States v. Bray, 546 F.2d at 857.  This well-established rule is a sufficient basis on which not to adopt

the Scotts' argument that the staying of briefing of the Motion for Partial Summary Judgment

establishes bias on Judge Wormuth's part.  Because, however, of the emphasis and repetition of the

point throughout the Scotts' Objections, the Court will address this argument further.

Throughout their Objections, the Scotts repeatedly reference Judge Wormuth's sua sponte

order staying briefing on the Scotts' Motion for Partial Summary Judgment.  See Objections at 6

("Magistrate Judge Wormuth expressed his opinion in his Report and Recommendation . . . without

---

Comm'rs of Bernalillo Cnty., 707 F.Supp.2d 1190 (D.N.M. 2010)(Browning, J.), rev'd sub nom.
Kerns v. Bader, 663 F.3d 1173 (10th Cir. 2011).  Thus, not only does the Court consider the Scotts'
Rule 60(b) Motion untimely, the Court concludes that this alleged bias involving White, which does
not appear in either of the Scotts' affidavits, see Daron Scott Aff. ¶¶ 16-19, at 4; Duryea Scott Aff.
¶¶ 21-24, at 4-5, does not meet the standard for recusal set out in section 455.

allowing the completion of briefing on Plaintiffs' Motion . . . .").  Most of these references are combined with a statement or intimation that there was no explanation given for that order other than Judge Wormuth's bias.  See, e.g., Objections at 4 ("[O]ne can only surmise bias behind Magistrate Judge Wormuth's swift action to stop Plaintiffs' motion practice.").

Judge Wormuth's Order to Show Cause lays out the reason for the stay.  See Order to Show Cause at 1-3.  As the Order to Show Cause noted, at that point, four Defendants that were added to the case in the Amended Complaint had not yet been served.  See Order to Show Cause at 1-2.  Given that four named Defendants were still not properly before the Court, and that the Scotts' Motion for Partial Summary Judgment apparently sought summary judgment against all Defendants, Judge Wormuth concluded that it would be more efficient to stay briefing on the Motion for Partial Summary Judgment until the problem with the unserved Defendants was resolved.  See Order to Show Cause at 1-2 ("Moreover, given the relationship of this issue with the pending dispositive motions including Plaintiffs' Motion for Partial Summary Judgment, the Court will stay further briefing on Plaintiffs' Motion for Partial Summary Judgment until further order of this Court.")  Under these circumstances, the Court does not find anything suspect about the issuance of the stay on briefing.

Moreover, it is difficult to see how the issuance of the stay was adverse to the Scotts.  Given that the Court concluded that their Amended Complaint failed to properly state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure, they could not have prevailed on the Motion for Partial Summary Judgment regardless whether it was fully briefed.[14]  Therefore, the Court overrules

---

[14]In their Objections, the Scotts further assert that bias was evident because Judge Wormuth "expressed his opinion in his Report and Recommendation [on the Motion to Dismiss] . . . without consideration of the evidence that had already been presented to the court and without allowing the completion of the briefing on Plaintiffs' Motion for Summary Judgment."  Objections at 6.  In considering a motion to dismiss, the Court is confined to the "four corners of the complaint."  United

the Scotts' objection that the issuance of the stay was sufficient evidence of bias to require recusal under section 455.

### 2.     The Denial of an Extension of Time for Objections Does Not Evidence Bias Requiring Recusal.

The Scotts also assert that the Court demonstrated bias by denying them an extension of time to file objections to the PFRD on the motion to dismiss.  See Objections at 6.  The Scotts  complain that there "is no explanation as to why Plaintiffs were not afforded an extension of time to file their objections to the Report and Recommendation."  Objections at 8-9.  As before, an adverse decision is not evidence of bias.  The Scotts were well advised of the deadline for the filing of objections. See Sept. 11, 2011 PFRD at 34; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Instead of meeting that deadline, the Scotts waited until two business days before the deadline and requested an extension.  See Motion for Stay of Review and Deadlines on Report and Recommendation Doc. 133, filed March 24, 2011 (Doc. 134)("Motion for Stay").  The requests provided no explanation why a delay was necessary and did not specify the length of time needed.  See Motion for Stay at 1-2. Under those circumstances, even if the Court might have made a different decision on the request for an extension, denial of the request was not inappropriate and, most importantly, not evidence of bias.  The Court, therefore, overrules the Scotts' objection which argues that the denial of an extension for objections was sufficient evidence of bias to require recusal under section 455.

### 3.     The Alleged Error of Doctoring the Court's Docket Is Not Evidence of Bias.

The Scotts also allege that the Court has removed the Motion for Partial Summary Judgment from the record; and, in making such an assertion, intimate some nefarious intent by the Court to

---

States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 730 n.37 (10th Cir. 2006).  Considering evidence presented to the Court in the Motion for Partial Summary Judgment motion when ruling on the Motion to Dismiss would have therefore been error.

conceal its biases.  See Objections at 5 ("Plaintiffs' Motion for Partial Summary [sic] does not even

exist in the record proper anymore.  Ask why, and the only reason is bias . . . .").  As of today, the

Court's Electronic Case Filing System displays Document 129, posted on January 11, 2011, and

labeled as "Motion for Partial Summary Judgment by Daron Scott, Duryea Scott."  See Doc. 129.

The motion is accessible with no restrictions.  There is no evidence that access to this document has

been restricted or that it has been deleted.  The Scotts' accusation that the Court doctored its docket

is a grave accusation, but there is no factual support for that argument.[15]  The Court overrules this

objection.

## III.   THE COURT ADOPTS IN PART JUDGE WORMUTH'S ATTORNEYS' FEE RECOMMENDATION, BUT WILL NOT AWARD ATTORNEYS' FEES FOR HAVING TO RESPOND TO THE RECUSAL MOTION.

The County Defendants moved for attorneys' fees under several provisions of the federal

rules and the United States Code.  See Motion for Attorneys' Fees at 1-2.  In the Sept. 11, 2011

PFRD,  Judge Wormuth recommends that the underlying action is not frivolous enough to justify

an award of all the County Defendants attorneys' fees; however, he recommends that the Court

award attorneys' fees pursuant to rule 54 of the Federal Rule of Civil Procedure and 28 U.S.C.

§§ 1920, 1927.  See Sept. 11, 2011 PFRD at 21-33.  The Scotts do not object to the recommendation

that costs should be awarded under rule 54 and 28 U.S.C. § 1920.  Given that awarding costs to the

prevailing party is generally appropriate, see Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute,

these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be

allowed to the prevailing party."), the Court does not believe that "the interests of justice" weigh in

---

[15]At another point, the Scotts remark that "[t]his Honorable Court has a duty to provide justice for all of its citizens, not just for those of the right color or income."  Objections at 8.  The implied accusation in such a statement is disturbing given the Court's commitment to equal justice. This Court takes its responsibility to equal justice seriously.

favor of sua sponte review of Judge Wormuth's determination that awarding costs is appropriate, One Parcel, 73 F.3d at 1060.

Specifically, Judge Wormuth recommends that the Court award attorneys' fees pursuant to section 1927 because counsel's reckless indifference to the rules vexatiously multiplied these proceedings. See Sept. 11, 2011 PFRD at 23-33. The Scotts object broadly that Judge Wormuth's attention to the rules has been excessive.[16] See Objections at 9-10 ("Much ado is given to the militant compliance to the rules . . . ."). Having reviewed the analysis in the Sept. 11, 2011 PFRD and the record in this case, the Court finds that attorneys' fees under section 1927 are merited in this case. Contrary to the Scotts' protests, Judge Wormuth has gone beyond the rules' bare requirements and has in several instances permitted the Scotts' suit to continue. While it is true that the Scotts' repeated failures to comply with an assortment of rules have been the basis for rejecting filings, Judge Wormuth has both routinely denied such motions without prejudice -- therein allowing another attempt to comply -- and has specifically directed the Scotts to the rules with which they needed to comply. See, e.g., Order Granting in Part and Denying in Part Plaintiff's Motion at 1-2, filed February 22, 2010 (Doc. 70); Order Denying Motion for Leave to File Amended Complaint at 1-4, filed June 2, 2010 (Doc. 88); Order Denying Plaintiffs' Motion for Leave to Amend at 1-2, filed June 29, 2010 (Doc. 96). Rather than serving as an illustration of bias, the patience Judge Wormuth has afforded the Scotts has approached the leniency afforded pro se litigants.[17] In the

---

[16]In one sentence, the Scotts also attempt to excuse their "mistake of relying on equivocal facts garnered from the internet, that the Honorable Magistrate Judge was previously an ADA in Las Cruces." See Objections at 10. Whether this factual assertion is excusable need not be decided, because neither Judge Wormuth nor the Court rely on that error to justify the award of attorneys' fees.

[17]The Scotts argue that Judge Wormuth committed some infraction by issuing the Sept. 11, 2011 PFRD before the reply deadline. See Objections at 10. While it might be good judicial practice to wait for a reply before ruling, a court need not await a reply brief before reaching a

Sept. 11, 2011 PFRD, Judge Wormuth describes counsel's pattern of indifference to the law and why this conduct justifies an award of attorneys' fees under section 1927. See Sept. 11, 2011 PFRD at 24-33.

The Court overrules the Scotts' objections regarding the award of attorneys' fees, and adopts the findings and the analysis in the Sept. 11, 2011 PFRD -- except on the issue of awarding attorneys' fees to the County Defendants for having to respond to the Rule 60(b) Motion seeking recusal.  The Scotts have objected generally to the award of attorneys' fees, thus making it appropriate for the Court to review Judge Wormuth's determination on what fees to award.  Given the fact-intensive standards that govern recusal, as well as the strict procedural requirements with which a party seeking recusal must comply, it is difficult for the Court to say that the Scotts filed a frivolous recusal motion.  See Sweetland v. Bank of Am. Corp., 241 F.App'x 92, 98-99 (4th Cir. 2007)(unpublished)(" We can envision situations in which motions are filed which are so baseless in fact and law as to be sanctionable under § 1927 as having been filed in bad faith, even though they are purportedly grounded in novel theories of law.  However, Sweetland's recusal motion does not fall into this category."); Hinman v. Rogers, 831 F.2d at 939 ("The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances. . . . The affidavit is strictly construed against the affiant, and there is a substantial

decision. See, e.g., Access Now, Inc. v. Crestwood Healthcare, LP, No. 3:01-CV-0869-L, 2009 U.S. Dist. LEXIS 94069, at *3 (N.D. Tex. Oct. 3, 2009) ("[T]he court determines that it need not wait for a reply before ruling on the motion."); Ayoub v. UNUM Life Ins. Co. of Am., No. 06-CV-15768-DT, 2007 U.S. Dist. LEXIS 29556, at *1 n.1 (E.D. Mich. Apr. 6, 2007) ("Nonetheless, because reply briefs are optional and because the court is denying Plaintiff's motion for summary judgment without reaching the merits, the court need not wait for receipt of Plaintiff's reply."); Pawnee Petroleum Prods., LLC v. Crawford, No. 01-1314-WEB, 2003 U.S. Dist. LEXIS 12164, at *6 n.1 (D. Kan. Apr. 18, 2003)("While the time for filing the reply has not yet expired, the court believes the issues raised in the motion and response have been adequately briefed and the court need not wait for a reply prior to issuing its ruling.").  This principle is particularly true in the context of a PFRD where the litigant will have the opportunity to file objections to the PFRD.

burden on the moving party to demonstrate the judge is not impartial."). Additionally, courts should

be cautious to punish parties for filing recusal motions, because disproportionate punishment could

potentially undermine faith in the judiciary given the sensitive nature of recusal motions. As the

Honorable Max Rosenn, United States Circuit Judge for the United States Court of Appeals for the

Third Circuit, discussed in a similar case:

> Whether the foregoing incident offered a colorable basis for a motion to recuse may be arguable, but there is nothing about it that warrants the imposition of sanctions under § 1927. Malakoff only needed a single reasonable, non-vexatious, non-bad faith basis for his recusal motion. Malakoff had several colorable bases for the motion. Focusing on the District Court's opinion imposing sanctions, there is an absence of specific findings of intentional misconduct, of bad faith or of any delay or extension of the proceedings. The record reasonably supports the conclusion that Malakoff had a colorable basis for his recusal motion. Moreover, in this high profile class action, Malakoff's motion probably served a very useful public purpose in removing any mis-perception of the impartiality of the court on the part of any of the policy holders, including Malakoff's clients and the many others who filed objections to the fairness of the proposed settlement. There is no evidence that the recusal motion justified sanctions under § 1927 and no findings of wilful bad faith to support it. Punishment under this statute is "sparingly applied" and requires "a detailed finding that the proceedings were both 'unreasonable and vexatious.'" In this case, there is an absence of detailed findings and an absence of a "sparing" application of punishment.

In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 197 (3d Cir.

2002)(Rosenn, J., concurring in part and dissenting in part)(citation omitted). While the Court might

be inclined to award attorneys' fees in relation to the portion of the recusal motion targeted at Judge

Wormuth, the County Defendants fee schedule, which is already quite detailed, indicates that it

would not be a simple task to segregate the work that the County Defendants performed in

responding to the recusal motion that relates to Judge Wormuth's alleged bias and the work

performed on the Court's alleged bias. See Time Records of Services Rendered on Behalf of the

Defendants in Responding to Plaintiffs' Rule 60/Recusal Motion at 1-3, filed September 13, 2011

(Doc. 149-2). Ultimately, the balance weighs in favor of not awarding attorneys' fees for the fees

incurred in responding to the recusal motion.

**IT IS ORDERED** that: (i) the Magistrate Judge's Report and Recommendation, filed September 11, 2011 (Doc. 148), is adopted except with respect to the recommendation that the Court award attorneys' fees against Plaintiffs Daron D. Scott and Duryea Scott for filing their recusal motion; (ii) Plaintiffs Daron D. Scott and Duryea Scott's Objections to Magistrate Judge Gregory Wormuth's Proposed Report and Recommendation and Supporting Memorandum, filed September 25, 2011 (Doc. 150), are overruled; (iii) Plaintiffs Daron Scott and Duryea Scott's Rule 60 Motion to Set Aside Judgments and to Recuse Magistrate Judge Wormuth and the Honorable District Judge Browning, filed August 24, 2011 (Doc. 145), is denied; and (iv) the Defendants' Amended Motion for Costs and Attorneys' Fees, filed May 2, 2011 (Doc. 141), is granted in part and denied in part. The Scotts shall pay to the County Defendants[18] the sum of $700.00 as costs under rule 54 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920, and the sum of $6468.50 for attorneys' fees under 28 U.S.C. § 1927.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Augustine M. Rodriguez , Jr
Albuquerque, New Mexico

    *Attorney for the Plaintiffs*

---

[18]The County Defendants include the following Defendants: (i) Dona Ana County; (ii) Robin Gojkovich; (iii) Linda Maldonado; (iv) Mary Lou Ward; (v) Paul Richardson; (vi) Curtis Childress; (vii) Travis Wells; (viii) John Rubio (named as Officer FNU Rubio in the case caption); (ix) John Palmer (named as Officer FNU Palmer in the case caption); (x) Valerie Heredia (named as FNU Herdia in the case caption); (xi) Joe Jacques; (xii) Manny Hernandez; (xii) Heather Ferguson; and (xiii) all unknown El Paso Animal Control Officers.

Matthew P. Holt
Damian L. Martinez
Holt Mynatt Martinez P.C.
Las Cruces, New Mexico

> *Attorneys for the Defendants Dona Ana County Commissioners; Dona Ana County Sheriff's Office, Chuck Franco, Todd Garrison, Michelle Ugalde, Officer Fnu Rubio, Fnu Herdia, Joe Jacques, Heather Ferguson, Unknown Animal Control Officers, Dona Ana County, Officer Robyn Gojkovich, Officer Linda Maldonado, Officer Mary Lou Ward, Officer Paul Richardson, Officer Curtis Childress, Officer Travis Wells, Officer Fnu Palmer, and Officer Manny Hernandez*

Sean Olivas
Keleher & McLeod PA
Albuquerque, New Mexico

> *Attorneys for the Defendants Gary King, Susan Riedel, Amy Orlando, Susana Martinez, Richard Silva, Olivia Nevarez-Garcia, and Joseph Guillory*

Duane A. Baker
El Paso, Texas

*--and--*

Mario A. Esparza
Las Cruces, New Mexico

> *Attorneys for Defendant Steve Schmidt*